**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELENA NACARINO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| WYNN RESORTS HOLDINGS, LLC, | |
| Defendant. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Elena Nacarino files this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against Wynn Resorts Holdings, LLC ("Defendant" or "Wynn"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1. They say what happens in Vegas stays in Vegas. But that is not the case when consumers book hotel rooms online through the WynnLasVegas.com website (the "Website").

2. Defendant owns and operates the Website. Defendant has purposefully installed various tracking application programming interfaces into the code of its website to aid, employ, agree with, or otherwise enable several third parties – Snap Inc. ("Snap"); Google LLC ("Google"); and Meta Platforms, Inc. ("Meta") (collectively, the "Third Parties") – to eavesdrop on communications sent and received by Plaintiff and Class Members.

3. So any time consumers book rooms to the Wynn through the Website, these Third-Parties discover *who* exactly stays at *which* hotel, *which* rooms they will stay in, on *which* dates they come and on *which* dates they leave, along with *how* many guests they have with them. If they ask for an upgrade, the Third Parties learn that too. This disclosed information plainly qualifies as "guest records" that the law prohibits "hotelkeepers" like Wynn from sharing. Cal. Civ. Code § 53.5.

4. Because Defendant failed to obtain consumers' consent before enabling the Third Parties to intercept their confidential hotel booking communications, Defendant violated the California Invasion of Privacy Act ("CIPA") §§ 631-632, and the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, *et seq*.

## PARTIES

5. Plaintiff Elena Nacarino is a resident and citizen of San Francisco, California. Plaintiff Nacarino has a Facebook account, a Gmail account, and a Snapchat account. These social media and email services are all owned and operated by the Third-Parties here.

6. Several times, including on or around May 18, 2025, Plaintiff Nacarino visited Defendant's Website, WynnLasVegas.com, on the same browser that she used to access Facebook

and Gmail. Plaintiff Nacarino was in California when she visited the Website.

7. Upon accessing the Website, as alleged in greater detail below, Plaintiff Nacarino booked a Wynn Las Vegas stay. Each of these communications was intercepted in transit by the Third Parties—as enabled by Defendant—including communications that contained Plaintiff Nacarino's confidential "guest records," as defined by California Civil Code § 53.5. Neither Defendant nor the Third Parties procured Plaintiff Nacarino's consent prior to this interception.

8. Defendant Wynn Resorts Holdings, LLC is Nevada corporation with its principal place of business at 3131 Las Vegas Blvd South Las Vegas, NV 89109.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

10. The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in California, and Plaintiff's claims arise out of Defendant's forum-related activities. Plaintiff accessed and navigated the Website while in California, and Defendant assisted the Third Parties with intercepting Plaintiff's communications in this District.

11. As detailed below, Defendant purposefully, systematically, and repeatedly reached into and targeted California in connection with marketing, promoting and otherwise making available the hotel booking services specifically offered to California residents, including Plaintiff, via the Website.

12. The Court also has specific personal jurisdiction over Defendant because Defendant "obtain[ed] valuable personal data about California consumers for its own commercial gain." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756 (9th Cir. 2025) (en banc). Through those business activities, Defendant tortiously violated Plaintiff's and Class Members' privacy through its collection, maintenance, and sale of valuable personal data from California consumers.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

**FACTUAL ALLEGATIONS**

## I. The California Invasion of Privacy Act

14. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

15. The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

16. Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

17. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any

information so obtained."

18. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

19. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

20. A "confidential communication" for the purposes of CIPA § 632 is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

21. Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1). Plaintiff does so, here, against Defendant.

**II. The Federal Wiretap Act**

22. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(a).

23. Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity … which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

24. Persons who have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

**III.    California Civil Code § 53.5**

25.    As the California Legislature recognized, a "guest record" maintained by an owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations is confidential.  Such an owner or operator "shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order."  Cal. Civil Code § 53.5(a).

26.    Per Cal. Civil Code § 53.5(c):

> "Guest record" for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number.

27.    Further, the legislative history of § 53.5 indicates:

> (a) In 1972, California voters amended the California Constitution to include the right of privacy among the "inalienable" rights of all people. The amendment established a legal and enforceable right of privacy for every Californian. Fundamental to this right of privacy is the ability of individuals to control the use of their personal information.

> (b) Since California voters approved the right of privacy, the California Legislature has adopted specific mechanisms to safeguard consumer privacy, including the California Consumer Privacy Act of 2018, the Online Privacy Protection Act, the Reader Privacy Act, the Privacy Rights for California Minors in the Digital World Act, and Shine the Light, a California law intended to give Californians the 'who, what, where, and when' of how businesses handle consumers' personal information.

> (c) Californians frequently have to disclose their sensitive personal information to third parties in order to accomplish routine activities: apply for a job; apply for housing; raise a child; drive a car or take transportation; or stay at a hotel or motel.

> (d) California law has not kept pace with these developments and the personal privacy implications surrounding the collection, use, and protection of personal information by third parties.

> (e) Many businesses collect personal information from California consumers. They may know where a consumer lives, how many children a consumer has, where a consumer lives and works, where a consumer travels and where they stay on their trip, how fast a consumer drives, a consumer's personality, sleep habits, biometric and health information, financial

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    5

information, precise geolocation information, and social networks, to name a few categories.

(f) The unauthorized disclosure of personal information and the loss of privacy can have devastating effects for individuals, including financial fraud, identity theft, unnecessary costs to personal time and finances, destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.

(g) When Californians leave their homes to travel via bus or stay at lodging establishments throughout their state, they desire assurances that these businesses will respect their privacy and safeguard their personal information from improper disclosure.

(h) Protecting the privacy of personal information promotes consumer confidence and encourages both residents and visitors to travel to and within California and to patronize California businesses.

(i) Therefore, it is the intent of the Legislature to further Californians' right to privacy by ensuring that the personal information disclosed by patrons of lodging establishments and bus companies is used for the intended business purposes and not improperly disclosed.

California S.B. 1194 (September 27, 2018).[1]

28.     Here, Website users' communications with Wynn – made while browsing and booking a Wynn hotel stay via the Website – contain sensitive and confidential "guest records," as defined by Cal. Civil Code § 53.5.

29.     First, the communications include "record[s] that identif[y] an individual[.]"  Cal. Civil Code § 53.5(c).  As described *infra*, §§ V, VII, Defendant enables Snap to identify individual Website by their respective Snapchat accounts, utilizing several cookies, including but not limited to the _scid and _scir_r cookies.  Defendant also enables Snap to identify individual Website users through the collection of user parameters, by which Snap records the contact details Website users provide on the Website (i.e., email address and phone number).  Defendant enables Google to identify individual Website users with Google Analytics identity spaces – a combination of user IDs, user-provided data (i.e., contact details like email address, phone number, name, and/or address, etc.), device IDs, and/or machine learning-based behavioral modeling – and Google signals (which associates web browsing activity with users' Google accounts).  Defendant enables Meta to identify individual Website users by their respective Facebook accounts, utilizing several cookies, including

[1] https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180SB1194.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                      6

the c_user; datr; fr; and _fbp cookies. Defendant also enables Meta to identify individual Website users through advanced matching, by which Meta records the contact details Website users provide on the Website (i.e., name, email address, phone number, etc.). These pieces of data collected by Snap, Google, TikTok, and Meta constitute "record[s] that identif[y] an individual" (Cal. Civil Code § 53.5(c)), as the cookies and other IDs at issue contain "unique identifying number[s]" assigned to Website users (*id.*) and the contact details (i.e., name, email address, phone number, etc.) at issue are sufficient to identify individuals. *Id.*

30. Website users' communications with Wynn also "identif[y] an individual [as a Wynn] guest, boarder, occupant, lodger, customer, or invitee[.]" *Id.* The Third Parties intercept Website users' button clicks selecting the location (*e.g.*, Las Vegas, Nevada), the name of the particular Wynn hotel (*e.g.*, Wynn Las Vegas), the desired trip dates (*e.g.*, June 18, 2026 to June 19, 2026), the number of rooms and guests (*e.g.*, one room, two guests), the particular room rate (*e.g.*, Flexible Getaway Rate), the room type (*e.g.*, Panoramic View Two Queens), upgrades and/or add-ons selected by users (*e.g.*, Late Checkout) and the fact that users actually booked a hotel stay, along with the price of the hotel stay. These communications "identif[y] an individual [as a Wynn] guest, boarder, occupant, lodger, customer, or invitee" (Cal. Civil Code § 53.5(c)) because they show that all Website users are "invitees" of Wynn – individuals with "express or implied invitation to enter or use [Wynn's] premises."[2] These communications also identify certain Website users (those who complete the booking process) as Wynn hotel "guests" and "customers."

31. Thus, the Third Parties – as aided by Defendant – intercepted "guest records," which are confidential, under Cal. Civil Code § 53.5. Moreover, none of the Third Parties is a legitimate "third-party service provider," as defined by Cal. Civil Code § 53.5(f), because none of the Third Parties is "an entity contracted to provide services outlined in [a] contract [with Wynn] that has no independent right to use or share the data beyond the terms of the contract." Rather, the Third Parties have the capability to use the information they wiretap for purposes other than simply providing a recording to Defendant. *See infra* § VIII. Therefore, Defendant's conduct here at issue was not permitted by Cal. Civil Code § 53.5(i).

---

[2] INVITEE, BLACK'S LAW DICTIONARY (11th ed. 2019).

## IV.   Overview of Defendant's Website

32.   Defendant owns and operates the Website.  Defendant has integrated the Third Parties' wiretaps into the Website.

33.   On the Website, Website users can browse and book Wynn stays.  When doing so, Website users provide Defendant with confidential information, including "guest records" under Cal. Civil Code § 53.5.  *See supra* § III.

34.   Unbeknownst to Plaintiff and Class Members, however, Defendant aids, agrees with, employs, or otherwise enables the Third Parties to eavesdrop on those confidential communications using the Third Parties' respective wiretaps, as set out *infra*.

35.   Website users' confidential communications are the product of Website users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are not procedurally or automatically generated).  Instead, as set out below, the confidential communications stem from Website users typing into data fields, conveying responses to questions and prompts, and actively making other selections.  All of the foregoing is information created through the intent of Website users: information created by and in response to Website users' communicative inputs; information created by and in response to Website users' intended messages to the Website and Defendant; and information created by and in response to Website users' having conveyed and expressed their respective desires that the Website would supply them with certain, highly personalized, types of information and/or responses.

36.   Website users may browse and book Wynn hotel rooms.  To do so, users select the dates for their trip, the number of rooms they require, and the number of guests per room who will be traveling.  *See* Screens 1A and 1B, next page.  The Third Parties, as enabled by Defendant, contemporaneously intercept Website users' button clicks selecting such items:

//

//

//

//

//

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                                8



**Website "Screen 1A"**



**Website "Screen 1B"**

37.     Next, Website users review available pricings, offers, and/or rates.  *See* Screen 2, next page.  Users may update check in and check out dates, and rooms and guests per room.  *See id.*

//



**Website "Screen 2"**

38. Then, Website users review and choose a particular room. *See* Screen 3A, next page. Website users may click "View Room Details" to learn more about a particular room. *See* Screens 3A and 3B, next page. Then users click "Book Now." *See* Screen 3B.

//

//

//

//

//

//

//

//

//

//

//

//



**Website "Screen 3A"**

**Website "Screen 3B"**

39.     At this point, Wynn asks users whether they wish to upgrade their room.  *See* Screen 4A.  For example, users may upgrade their room to a "Wynn Panoramic Corner King."  *See id.*  Users can click the "(i)" button to learn more about a particular upgrade.  *See id.*  For example, Wynn informs users that a Wynn Panoramic Corner King room offers "the comforts of a Wynn Resort room with a spectacular view of the Las Vegas Strip[,]" and "[t]he marble bathroom features expanded areas for personal items, glass-enclosed shower and deep-soaking tub, separate water closet, custom bath amenities and plush terry cloth robes."  *See* Screen 4B, next page.  Users may also select one or more "Add-Ons" such as "Late Checkout."  Screen 4C, next page.  After selecting any desired upgrade and/or add-ons, users click "Proceed to Checkout."  Screen 4A.



**Website "Screen 4A"**

//

//

//

//





**Website "Screen 4B"**



**Website "Screen 4C"**

40. Website users check out by typing their personal information (first and last name, email, phone number) and entering their payment information. *See* Screen 5. Finally, users click "Reserve Now" to reserve their room. Users are brought to a confirmation page with their "Confirmation Number[.]" *See* Screen 6.[3]



**Website "Screen 5"**



**Website "Screen 6"**

---

[3] The email addresses contained in this complaint were used for the purposes of testing Defendant's Website.

## V.      Overview of the Third Parties' Tracking Technologies

41.     Snap, Google, and Meta each wiretap the Website with their respective tracking technologies, which Defendant purposefully installed on the Website.

42.     The Third Parties' tracking technologies send secret instructions to a Website user's browser, without alerting the individual that this is happening.  The trackers then cause the browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers alongside additional information about the Website user's identity.  This entire process occurs within milliseconds.  In other words, when a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to the Third Parties at the same time as they are being sent to Defendant.  Thus, the Third Parties' interception of these communications occurs "in transit." *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion…"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device. Section 631's protections extend explicitly to the beginnings and ends of communications…"); *James v. Walt Disney Co.*, 710 F. Supp. 3d 942, 961-62 (N.D. Cal. 2023) (finding in-transit interception was alleged based on similar process to the one alleged herein).

### A.      Snap

44.      Snap wiretaps the Website with trackers associated with the "Snap Pixel,"[4] which is a "piece of JavaScript code" that website operators, like Defendant, "place … within [their] website[s to] track[] the actions Snapchatters [and other users] take while browsing [the] site."[5]  Specifically, the Snap Pixel "[m]easures [] conversion events"[6] – including a menu of "standard events" like

---

[4] SNAP, USING THE SNAP PIXEL, https://forbusiness.snapchat.com/blog/the-snap-pixel-how-it-works-and-how-to-install-it.

[5] *Id.*

[6] *Id.*

"PURCHASE" ("[t]rack purchases"); "SAVE" ("[t]rack add to wishlist events of specific items"); "START_CHECKOUT" ("[t]rack checkout events"); "ADD_CART" ("[t]rack add to cart events of specific items"); "VIEW_CONTENT" ("[t]rack content view events"); "SEARCH" ("[t]rack search events"); "PAGE_VIEW" ("[t]rack webview pages"); and "RESERVE" ("[t]rack reservations").[7] The Snap Pixel can also "[t]rack … custom events" with "custom J[ava]S[cript] function[s]" set by website operators.[8]

45.    When this data is transmitted to Snap, it is coupled with, *inter alia*, "[b]rowser level info[] … such as IP address, web page domain, user agent, document, referral, first and third-party cookies"; "[m]etadata … such as HTML tags"; and "a Pixel ID[.]"[9]  In addition, the Snap Pixel can collect "user parameter[s] (email or phone number)" and "[f]irst [n]ame"; "[l]ast [n]ame"; "[c]ity"; "[s]tate"; "[z]ip [c]ode"; "[c]ountry"; and "[a]ge[.]"[10]  The Snap Pixel's "Automated Matching" feature offers a way to streamline this "PII matching[,]"[11] by "automatically attempt[ing] to detect and send Snap information about [] customers such as information from forms on [a] website[,]" and then using "[t]hese high quality signals … to improve features associated with the Pixel such as targeting, measurement, and optimization."[12]

46.    Thus, through the Snap Pixel, Snap can "match a customer e-mail or phone number back to a Snapchatter e-mail or phone number[]" and "attribute website actions to Snapchatters."[13] Indeed, Snap measures "how well [a website operator's P]ixel setup matches events to Snapchat Accounts[,]" with a metric called "Event Quality Score (EQS)."[14]  This, in combination with the

---

[7] SNAP, DIRECTLY IMPLEMENT THE PIXEL ON YOUR WEBSITE, https://businesshelp.snapchat.com/s/article/pixel-direct-implementation.

[8] *Id.*

[9] SNAP, PIXEL IMPLEMENTATION FAQS, https://businesshelp.snapchat.com/s/article/snap-pixel-faq.

[10] SNAP, DIRECTLY IMPLEMENT THE PIXEL ON YOUR WEBSITE, https://businesshelp.snapchat.com/s/article/pixel-direct-implementation.

[11] SNAP, PIXEL IMPLEMENTATION FAQS, https://businesshelp.snapchat.com/s/article/snap-pixel-faq.

[12] SNAP, PIXEL FAQS, https://businesshelp.snapchat.com/s/article/pixel-faqs.

[13] SNAP, PIXEL IMPLEMENTATION FAQS, https://businesshelp.snapchat.com/s/article/snap-pixel-faq.

[14] SNAP, SNAP PIXEL: POWER YOUR AD PERFORMANCE, https://forbusiness.snapchat.com/advertising/snap-pixel.

---

Snap Pixel's other features, helps "optimize ad delivery"; create Custom Audiences that "target users who have visited [a] site, completed specific actions, or engaged with [] ads";[15] and "create a type of Custom Audience called a Lookalike Audience, which seeks out people who … are similar to [a website's] best customers."[16]

### B.     Google

47.     Google wiretaps the Website with trackers associated with "Google Analytics."[17] According to Google, "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]."[18]  "To measure a website … [one] add[s] a small piece of JavaScript measurement code to each page on [a] site."[19]  Then, "[e]very time a user visits a webpage, the tracking code will collect … information about how that user interacted with the page."[20]   Specifically, Google Analytics tracks "events"; "sessions"; and "users[.]"[21]

48.     "Events let [clients] measure … when someone loads a page, clicks a link, [] makes a purchase[]" and more.[22]  Google provides a menu of "recommended events" (i.e., "completes a purchase"; "searches [] website or app"; "select content on [] website or app"; "views an item"; "views their shopping cart")[23] and also allows for "collect[ing] additional information that Google Analytics does not collect automatically[,]" through "custom events."[24]

49.     A "session" is "the period from when a user visits [a] website or app to when they

---

15 Id.

16 SNAP, USING THE SNAP PIXEL, https://forbusiness.snapchat.com/blog/the-snap-pixel-how-it-works-and-how-to-install-it.

17 GOOGLE, START LEARNING ABOUT GOOGLE ANALYTICS, https://developers.google.com/analytics.

18 GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447.

19 Id.

20 Id.

21 GOOGLE, TRAFFIC-SOURCE DIMENSIONS, https://support.google.com/analytics/answer/11080067.

22 GOOGLE, SET UP EVENTS, https://developers.google.com/analytics/devguides/collection/ga4/events.

23 GOOGLE, [GA4] RECOMMENDED EVENTS, https://support.google.com/analytics/answer/9267735.

24 GOOGLE, [GA4] CUSTOM EVENTS, https://support.google.com/analytics/answer/12229021.

---

leave [said] website or app[.][25] "When a session starts, Google automatically collects a session_start event and generates a session ID (ga_session_id) and session number (ga_session_number)[.]"[26]

50. Finally, to discern when "two different [users] interact with [a] website[,] … Google Analytics identifies an individual user based on [Google Analytics] reporting identit[ies.]"[27] Reporting identities are combinations of "identifiers … called *identity spaces*" – namely, "User-ID"; "user-provided data"; "device ID"; and "modeling[.]"[28]

- A "User-ID" is a "persistent ID[,]"[29] consisting of a unique combination of up to "256 characters[,]"that is created by website operators and "assign[ed] and consistently reassign[ed] … to [] users[,] … typically [] during login."[30]

- "User-provided data" consists of contact details such as "email, phone, name and address[,]" provided by website users, that "is [] matched with other Google data … to improve the accuracy of [] measurement data and power enhanced Analytics capabilities."[31]  Although these personal details are "hashed,"[32] the reality is that, even in hashed form, they are traceable to individuals.[33]

---

[25] GOOGLE, TRAFFIC-SOURCE DIMENSIONS, https://support.google.com/analytics/answer/11080067.

[26] GOOGLE, [GA4] ABOUT ANALYTICS SESSIONS, https://support.google.com/analytics/answer/9191807.

[27] GOOGLE, TRAFFIC-SOURCE DIMENSIONS, https://support.google.com/analytics/answer/11080067.

[28] GOOGLE, [GA4] REPORTING IDENTITIES, https://support.google.com/analytics/answer/10976610.

[29] *Id.*

[30] GOOGLE, [GA4] MEASURE ACTIVITY ACROSS PLATFORMS WITH USER-ID, https://support.google.com/analytics/answer/9213390.

[31] GOOGLE, [GA4] USER-PROVIDED DATA COLLECTION, https://support.google.com/analytics/answer/14077171.

[32] *Id.*

[33] *See, e.g.*, FEDERAL TRADE COMMISSION, DOES HASHING MAKE DATA "ANONYMOUS"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique … the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); FEDERAL TRADE COMMISSION, NO, HASHING STILL DOESN'T MAKE YOUR DATA ANONYMOUS, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous ("[H]ashes aren't 'anonymous' and can still be used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized."); STEVEN ENGLEHARDT ET AL., I NEVER SIGNED UP FOR THIS! PRIVACY IMPLICATIONS OF EMAIL TRACKING,

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    18

- A "device ID" is a "browser-based or mobile-app-based identifier[.]"[34] "On a website, device ID gets its value from the client ID property of the _ga cookie. In an iOS or Firebase app, device ID gets its value from the app-instance ID, which identifies a unique installation of the app."[35]

- "Modeling" uses "machine learning to model the behavior of users who decline analytics cookies based on the behavior of similar users who accept analytics cookies."[36]

51.     Google Analytics can also leverage "Google signals," which "associates [data] with user[s'] … Google accounts," for "users who have signed in …  and who have turned on Ads Personalization."[37] "This association of data with these signed-in users is used to enable cross-device remarketing, and cross-device key events export to Google Ads."[38]

**C.     Meta**

52.     Meta wiretaps the Website with trackers associated with the "Meta Pixel."[39] According to Meta, "[t]he Meta Pixel is a snippet of JavaScript code that allows [clients] to track visitor activity on [their] website[s]. It works by loading a small library of functions which [] can [be] use[d] whenever a site visitor takes an action (called an **event**) that [a client] want[s] to track (called a **conversion**)."[40]  Meta offers a menu of "standard events" that can be tracked, including

---

https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy protection. This is folk knowledge in the security community, but bears repeating."); MARTECH, FTC PRIVACYCON: YOUR EMAIL ADDRESS IS LEAKING AND VULNERABLE, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] … Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[34] GOOGLE, [GA4] DEVICE ID, https://support.google.com/analytics/answer/9356035.

[35] *Id.*

[36] GOOGLE, [GA4] BEHAVIORAL MODELING FOR CONSENT MODE, https://support.google.com/analytics/answer/11161109.

[37] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345.

[38] *Id.*

[39] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[40] *Id.* (emphasis in original).

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    19

what content a visitor views or purchases.[41] Advertisers can also create their own tracking parameters by building a "custom event."[42] Thus, the Meta Pixel helps "understand[] the actions people take on [a] website."[43]

53. The Meta Pixel "relies on Facebook cookies, which enable [Meta] to match [] website visitors to their respective Facebook User accounts."[44] Additionally, "[w]ith advanced matching, [website operators] can send [Meta] hashed customer information along with [] Meta Pixel events, which can help … match more of the conversions that happen on your website to people on Meta."[45]

54. This is highly useful for marketing and advertising. Specifically, the Meta Pixel can be used to help "measure the effectiveness of … ads"; "define custom audiences for ad targeting"; and support "Advantage+ catalog ads campaigns[.]"[46]

55. With respect to measuring ad effectiveness, "[t]rack[ing ] website visitors' actions[,] also known as conversion tracking[,] ... can be used to … calculate [] return[s] on ad investment[s]."[47] "In [the] Meta Ads Manager, [website operators] can see how many conversions happened as a result of [their] Meta ads."[48] This includes "cross-device reporting, which lets [advertisers] see cross-device conversions across apps and the web (for example, if a customer sees an ad for a product on

---

[41] META, SPECIFICATIONS FOR META PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655. *See also* META, STANDARD EVENTS, https://developers.facebook.com/docs/meta-pixel/reference.

[42] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005; *see also* META, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[43] META, THE META PIXEL: WHAT IT IS AND HOW TO USE IT, https://www.facebook.com/government-nonprofits/blog/the-facebook-pixel.

[44] META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started.

[45] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

[46] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[47] META, CONVERSION TRACKING, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking.

[48] META, USE CONVERSION TRACKING TO MEASURE RESULTS, https://www.facebook.com/business/help/339239069606476.

their mobile phone, but decides to buy it later on their desktop computer).["49]

56.    A "custom audience is an ad targeting option"[50] that can be used by advertisers, like Defendant, "to find people most likely to respond to [their] ad[s]."[51]  Clients can "[c]reate [an] online audience based on the traits of who [they] want to see [their] ad[s], and narrow down [their] ad[s'] audience[s] by interests, gender or location and use ad targeting to find the people most likely to take action.  Once [an] ad starts running, [Meta's] system will learn who is engaging with it and, over time, narrow [the] audience [to help] reach more of the right people."[52]  Advertisers can target, among other things, "[n]ew customers with specific interests or from a specific location"; "[p]eople who have already shown an interest in [a client's] business"; and "[p]eople who share interests with [a client's] current customers[]" (i.e., "Lookalike Audience[s]").[53]

57.    "Advantage+ catalog ads are dynamically created by populating an ad template with product information found in a data feed. This allows [Meta clients] to create thousands of ads without having to configure each of them individually."[54]  Clients "can also use Advantage+ catalog ads to target visitors based on how they have interacted with [their] website in the past."[55]

## VI.    Defendant Aids, Agrees with, Employs, or Otherwise Enables the Third Parties to Wiretap Californians' Communications

### A.    Snap

58.    Snap, as enabled by Defendant, contemporaneously intercepts the following Website communications.

---

[49] META, USE CONVERSION TRACKING TO MEASURE RESULTS, https://www.facebook.com/business/help/339239069606476.

[50] META, ABOUT CUSTOM AUDIENCES, available at https://web.archive.org/web/20251122040609/https://www.facebook.com/business/help/74435470 8981227?id=2469097953376494.

[51] META, AUDIENCE AD TARGETING, https://www.facebook.com/business/ads/ad-targeting.

[52] Id.

[53] Id.

[54] META, META PIXEL FOR ADVANTAGE+ CATALOG ADS, https://developers.facebook.com/docs/meta-pixel/get-started/advantage-catalog-ads.

[55] Id.

---

url: "https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2"

url: "https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2"
  v: "3.54.9-2604171932"
 ▼req: [{md: {btx: "CHECK INCHECK OUT↵06/18/2026↵-↵06/19/2026", btc: "ws-calendar-dates",…}, del: 334}]
   ▼0: {md: {btx: "CHECK INCHECK OUT↵06/18/2026↵-↵06/19/2026", btc: "ws-calendar-dates",…}, del: 334}
     del: 334
    ▼md: {btx: "CHECK INCHECK OUT↵06/18/2026↵-↵06/19/2026", btc: "ws-calendar-dates",…}
      btc: "ws-calendar-dates"
      btx: "CHECK INCHECK OUT\n06/18/2026\n-\n06/19/2026"        "CHECK INCHECK OUT\n06/18/2026\n-\n06/19/2026"
      ▸ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
  u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"

59.     As shown by the red highlights in the above excerpts of the Website's transmissions, Snap intercepts and/or otherwise obtains the fact that users are looking to make a reservation on Defendant's website (here, "reservations.wynnlasvegas.com"). As shown by the yellow highlights, Snap intercepts and/or otherwise obtains the desired trip dates selected by users (here, "CHECK INCHECK OUT…06/18/2026…06/19/2026"). As shown by the blue highlights, Snap intercepts and/or otherwise obtains the number of rooms and adult guests selected by users (here, "rooms=1… adults=2"" as in two adults are sharing one room). These communications are the product of button clicks on Website Screens 1A and 1B, and Screen 2.

url: "https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0"
  v: "3.54.9-2604171932"
 ▼req: [{md: {btx: "VIEW ROOM DETAILS↵WYNN PANORAMIC VIEW TWO QUEENS",…}, del: 79}]
   ▼0: {md: {btx: "VIEW ROOM DETAILS↵WYNN PANORAMIC VIEW TWO QUEENS",…}, del: 79}
     del: 79
    ▼md: {btx: "VIEW ROOM DETAILS↵WYNN PANORAMIC VIEW TWO QUEENS",…}
      btc: "roomdetails ws-label-after ws-collapsible-header toggle"
      btx: "VIEW ROOM DETAILS\nWYNN PANORAMIC VIEW TWO QUEENS"
      ▸ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
  u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"

url: "https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0"
  v: "3.54.9-2604171932"
 ▼req: [{md: {btx: "BOOK NOW", btc: "ws-button-small ws-tag ws-primary wsViewRateRoom",…}, del: 143},…]
   ▼0: {md: {btx: "BOOK NOW", btc: "ws-button-small ws-tag ws-primary wsViewRateRoom",…}, del: 143}
     del: 143
    ▼md: {btx: "BOOK NOW", btc: "ws-button-small ws-tag ws-primary wsViewRateRoom",…}
      btc: "ws-button-small ws-tag ws-primary  wsViewRateRoom"
      btx: "BOOK NOW"
      ▸ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
   ▸1: {md: {pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"], ps: false}, del: 0}
  u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"

60.     As shown by the green highlights in the above excerpts of the Website's transmissions, Snap intercepts and/or otherwise obtains the particular rooms users click to learn more about (here, "VIEW ROOM DETAILS…WYNN PANORAMIC VIEW TWO QUEENS") and the fact that users select a particular room (here, "BOOK NOW"). These communications are the product of button clicks on Website Screens 3A and 3B.

//

```
▼1: {tagProtocol: 5, tagData: {title: "Review Your Booking Details | Wynn Las Vegas"}}
  ▼tagData: {title: "Review Your Booking Details | Wynn Las Vegas"}
     title: "Review Your Booking Details | Wynn Las Vegas"
     tagProtocol: 5
 ▼pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
    0: "5322c0e3-f882-47f6-88b2-0157342cf23c"
u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"
```

```
▼req: [{md: {btx: "Select", btc: "ws-upgrade-select", pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]},…}]
  ▼0: {md: {btx: "Select", btc: "ws-upgrade-select", pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]},…}
    del: 83
   ▼md: {btx: "Select", btc: "ws-upgrade-select", pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]}
      btc: "ws-upgrade-select"
      btx: "Select"
     ▶pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
  u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"
```

```
▼md: {btx: "Add", btc: "openAddon", pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]}
   btc: "openAddon"
   btx: "Add"
  ▶pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"
```

```
▼md: {btx: "PROCEED TO CHECKOUT", btc: "ws-button ws-primary",…}
   btc: "ws-button ws-primary"
   btx: "PROCEED TO CHECKOUT"
  ▶pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
 ▶1: {md: {pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"], ps: false}, del: 0}
u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"
```

61.     As shown by the tan highlight in the above excerpts of the Website's transmissions, Snap intercepts and/or otherwise obtains the fact that users proceed to the point of the booking process where they review their booking details (here, "Review Your Booking Details | Wynn Las Vegas").  As shown by the pink highlights, Snap intercepts and/or otherwise obtains that fact that users clicked to upgrade their room (here, "upgrade-select"; "Select") and that users select an add on (here, "openAddon"; "Add").  As shown by the grey highlight, Snap intercepts and/or otherwise obtains that users click to proceed to the checkout screen (here, "PROCEED TO CHECKOUT").  These communications are the product of button clicks on Website Screens 4A through 4C.

//

//

//

//

//

//

```
▼ req: [{md: {btx: "Reserve Now", btc: "ws-button ws-primary",…}, del: 2065},…]
  ▼ 0: {md: {btx: "Reserve Now", btc: "ws-button ws-primary",…}, del: 2065}
     del: 2065
     ▼ md: {btx: "Reserve Now", btc: "ws-button ws-primary",…}
        btc: "ws-button ws-primary"
        ▼ btff: [{id: "savedemail", name: "savedemail", type: "email", placeholder: "", value: false},…]
           ▶ 0: {id: "savedemail", name: "savedemail", type: "email", placeholder: "", value: false}
           ▶ 1: {id: "txEmail", name: "txEmail", type: "email", placeholder: "Email Address", value: true}
           ▶ 2: {id: "txEmailAlt", name: "txEmailAlt", type: "email", placeholder: "", value: false}
        btx: "Reserve Now"
        ▼ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
           0: "5322c0e3-f882-47f6-88b2-0157342cf23c"
  ▼ 1: {pc: {av: 5, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}, del: 2028}
     del: 2028
     ▼ pc: {av: 5, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}
        av: 5
        ▶ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
        u_hems: "7796e98d130b6d87bccf1943142e3603e8ffc33993324e37663f9931e0e9ec48"
        u_hpns: "ffae6ce2bca944b044ef2a02490bd081f0ef76e39aad6aca61360f2cbaad1eb6"
  ▼ 2: {pc: {av: 1, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}, del: 46}
     del: 46
     ▼ pc: {av: 1, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}
        av: 1
        ▶ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
        u_hems: "7796e98d130b6d87bccf1943142e3603e8ffc33993324e37663f9931e0e9ec48"
        u_hpns: "ffae6ce2bca944b044ef2a02490bd081f0ef76e39aad6aca61360f2cbaad1eb6"
  ▼ 3: {md: {pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"], ps: false}, del: 0}
     del: 0
     ▼ md: {pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"], ps: false}
        ▶ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
        ps: false
  u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"
```

```
▼ tagData: {title: "Order Confirmation | Wynn Las Vegas"}
     title: "Order Confirmation | Wynn Las Vegas"
  tagProtocol: 5
  ▶ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"
```

62.     As shown by the orange highlights in the above excerpts of the Website's transmissions, Snap intercepts and/or otherwise obtains the fact that users enter their personal information; specifically, their email address and phone number (here, "hems" and "hpns"[56]).  As shown by the purple highlights, Snap intercepts and/or otherwise obtains the fact that a user has reserved their hotel stay and reached the confirmation page confirming their booking (here, "Reserve Now"; "Order Confirmation | Wynn Las Vegas").  These communications are the product of button

---

[56] The orange highlights in this screenshot contain users' hashed email addresses and phone numbers.  Snap's ability to identify individual website users using this personally identifiable information ("PII") is discussed in greater detail *infra* § VII.

clicks and typing on Website Screen 5.

**B.    Google**

63.    Google, as enabled by Defendant, contemporaneously intercepts the following Website communications.



64.    As shown by the red highlights in the above excerpts of the Website's transmissions, Google intercepts and/or otherwise obtains the fact that users are looking to make a reservation at Wynn Las Vegas (here, "reservations.wynnlasvegas.com").  As shown by the yellow highlights, Google intercepts and/or otherwise obtains the desired trip dates selected by users (here, "checkIn=06/18/2026&checkOut=06/19/2026"), and the days of the week that trips fall on (here, "CheckInWeekdayName...Thursday" and "CheckOutWeekdayName...Friday").  As shown by the blue highlights, Google intercepts and/or otherwise obtains the number of adult guests and rooms selected by users (here, "rooms=1" & "adults=2"" as in two adults are sharing one room).  These communications are the product of button clicks on Website Screens 1A and 1B.

//

//

//

//

| dl | https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0 |
|---|---|
| dt | Booking Rate Details \| Wynn Las Vegas |
| dr | https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2 |
| dp | /ibe/details.aspx |
| sid | 1776459619 |
| sct | 1 |
| seg | 1 |
| en | navigation_interaction |
| ep.platform | wlv |
| ep.site_code | WLV |
| ep.login_state | logged_out |
| ep.interaction_type | link_click |
| ep.component_name | Wynn Panoramic View Two Queens |
| ep.click_text | Book Now |
| ep.click_url | https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0#ws-cart-view |
| ep.event_section | body |
| ep.hostname | reservations.wynnlasvegas.com |
| ep.lateCheckout | False |
| ep.roomType | |
| ep.userLoginStatus | False |
| ep.memberID | not a member |
| ep.rateType | |
| epn.numberOfGuests | 2 |
| epn.numberOfAdults | 2 |
| epn.numberOfChildren | 0 |
| epn.numberOfRooms | 1 |
| ep.roomCheckInWeekdayName | Thursday |
| ep.roomCheckOutWeekdayName | Friday |

65.     As shown by the green highlights in the above excerpt of the Website's transmissions, Google further intercepts and/or otherwise obtains the fact that users clicked to book a particular room (here, "Wynn Panoramic View Two Queens"; "Book Now").  These communications are the product of button clicks on Website Screens 3A and 3B.

| dl | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
|---|---|
| dt | Review Your Booking Details \| Wynn Las Vegas |
| dr | https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0 |
| dp | /ibe/cart.aspx |
| sid | 1776459619 |
| sct | 1 |
| seg | 1 |
| en | view_cart |
| pr1 | id68661~nmWynn Panoramic View Two Queens~cpWEBRATES~ds~lp~brWYNNLAS~caWEBRATES~c2Flexible Getaway Rate~c3PANDD~c4~c5~li~ln~va~lo13763~pr359~qt1~k0check_in~v02026-06-18~k1check_out~v12026-06-19~k2rate_code~v2WEBRATES~k3package_id~v3 |
| epn.value | 359 |
| ep.hostname | reservations.wynnlasvegas.com |

66. As shown by the tan highlights in the above excerpt of the Website's transmissions, Google intercepts and/or otherwise obtains the fact that users proceed to the point of the booking process where users review their booking details (here, "view_cart"; "Review Your Booking Details | Wynn Las Vegas"). As shown by the dark green highlight, Google intercepts and/or otherwise obtains the price of a particular room before users select any upgrades and/or add-ons (here, "value...359" as in $359). *See also supra* ¶ 39, Screen 4A.

| | |
|---|---|
| cu | USD |
| dl | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| dt | Review Your Booking Details \| Wynn Las Vegas |
| dr | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| dp | /ibe/cart.aspx |
| sid | 1776459619 |
| sct | 1 |
| seg | 1 |
| en | view_cart |
| pr1 | id68662~nmWynn Panoramic Corner King~cpWEBRATES~ds~lp~brWYNNLAS~caWEBRATES~c2Flexib |
| epn.value | 499 |
| ep.hostname | reservations.wynnlasvegas.com |
| ep.lateCheckout | False |
| ep.roomType | Wynn Panoramic Corner King |
| ep.userLoginStatus | False |
| ep.memberID | not a member |
| ep.rateType | Flexible Getaway Rate |
| ep.numberOfRooms | 1 |
| ep.roomCheckInWeekdayName | Thursday |
| ep.roomCheckOutWeekdayName | Friday |

67. As shown by the pink highlights in the above excerpt of the Website's transmissions, Google intercepts and/or otherwise obtains the fact that users clicked to upgrade their room to a Wynn Panoramic Corner King room (here, "Wynn Panoramic Corner King"). As shown by the dark green highlights, Google intercepts and/or otherwise obtains the price of the hotel stay once a particular upgrade is selected (here, "USD"; "value"; "499" as in the price is $499). As shown by the orange highlight, Google intercepts and/or otherwise obtains the room rate (here, "Flexible Getaway Rate"). These communications are the product of button clicks on Website Screens 4A through 4C.

//

//

//

| dt | Payment Details | Wynn Las Vegas |
| dr | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| dp | /ibe/checkout.aspx |
| sid | 1776459619 |
| sct | 1 |
| seg | 1 |
| en | begin_checkout |
| pr1 | id68662~nmWynn Panoramic Corner King~cpWEBRATES~ds~lp~brWYNNLAS~caWEBRATES~c1Flexible Getaway Rate~c3PANCD~c4~c5~li~ln~va~lo13763~pr499~qt1~k0check_in~v02026-06-18~k1check_out~v12026-06-19~k2rate_code~v2WEBRATES~k3package_id~v3 |
| pr2 | id2623~nmLate Check Out~cpWEBRATES~ds~lp~brWYNNLAS~caWEBRATES~c2Flexible Getaway Rate~c3PANCD~c4~c5~li~ln~vaadd on~lo13763~pr100~qt1~k0check_in~v02026-06-18~k1check_out~v12026-06-19~k2rate_code~v2WEBRATES~k3package_id~v3 |
| epn.value | 599 |

68.    As shown by the grey highlights in the above excerpt of the Website's transmissions, Google intercepts and/or otherwise obtains that users have proceeded to the checkout screen where they enter their payment details (here, "begin_checkout"; "Payment Details | Wynn Las Vegas"). As shown by the pink highlights, Google intercepts and/or otherwise obtains that fact that users select a particular add on (here, "Late Check Out"), and the price of the add on (here, "pr100" as in $100). As shown by the dark green highlight, Google intercepts and/or otherwise obtains the price of the room after the upgrade and late checkout were selected (here, "value...599" as in $599). These communications are the product of button clicks on Website Screens 4A through 4C.

//

//

//

//

//

//

//

//

//

//

//

//

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    28

69.     As shown by the purple highlights in the above excerpts of the Website's transmissions, Google intercepted and/or otherwise obtains the fact that a user paid for a reservation and reached the confirmation page confirming their booking (here, "Order Confirmation | Wynn Las Vegas"; "purchase"; "page_view"), and also the confirmation number (here, "4SZ732LBK"). As shown by the light green highlight, Google intercepts and/or otherwise obtains the particular room the user paid for (here, the "Wynn Panoramic Corner King). As shown by the orange highlight, Google also intercepts and/or otherwise obtains the room rate (here, "Flexible Getaway Rate"). As shown by the dark green highlight, Google intercepts and/or otherwise obtains the total cost of the room after selecting upgrades and add-ons (here, "value...599" as in the price is $599). As shown

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                   29

by the yellow highlights, Google intercepts and/or otherwise obtains the desired trip dates selected by users (here, "CheckInDate…2026[-]06[-]18" and "CheckOutDate…2026[-]06[-]19"), and the days of the week the trip falls on (here, "Thursday" through "Friday"). As shown by the blue highlights, Google intercepts and/or otherwise obtains the number of rooms and nights (here, "numberOfRooms…1" and "roomNights…1"). These communications are the product of button clicks on Website Screen 5.

### C.    Meta

70.    Meta, as enabled by Defendant, contemporaneously intercepts the following Website communications.

| id | 387109018144427 |
|---|---|
| ev | SubscribedButtonClick |
| dl | https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2 |
| rl | https://www.wynnlasvegas.com/ |
| if | false |
| ts | 1776459626488 |
| cd[buttonFeatures] | {"classList":"ws-calendar-dates","destination":"https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2#","id":"lbChekInOutDates","imageUrl":"","innerText":"CHECK INCHECK OUT\n06/18/2026\n-\n06/19/2026","numChildButtons":0,"tag":"a","type":null,"name":""} |
| cd[buttonText] | CHECK INCHECK OUT<br>0/0/0<br>-<br>0/0/0 |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Wynn Las Vegas"} |

| ev | PageView |
|---|---|
| dl | https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2# |
| rl | https://www.wynnlasvegas.com/ |
| if | false |
| ts | 1776459626685 |
| sw | 1920 |
| sh | 1080 |
| v | 2.9.300 |
| r | stable |
| ec | 2 |
| o | 12318 |
| fbp | fb.1.1776459619950.531548914478206395 |

71.    As shown by the red highlight in the above excerpt of the Website's transmissions, Meta intercepts and/or otherwise obtains the fact that users are looking to make a reservation at Wynn

Las Vegas (here, "reservations.wynnlasvegas.com").  As shown by the yellow highlights, Meta further intercepts and/or otherwise obtains the desired trip dates selected by users (here, "CHECK INCHECK OUT…06/18/2026…06/19/2026").  As shown by the blue highlights, Meta intercepts and/or otherwise obtains the number of adult guests and rooms selected by users (here, "rooms=1" & "adults=2"" as in two adults are sharing one room).  These communications are the product of button clicks on Website Screens 1A and 1B, and Screen 2.

72.    As shown by the orange highlights in the above excerpt of the Website's transmissions, Meta intercepts and/or otherwise obtains the fact that a user clicked to view rooms at a particular room rate (here, "VIEW ROOMS"; "Flexible Getaway Rate"). These communications are the product of button clicks on Website Screen 2.

//

//

//

//

//

//

//

//

//

//

| ev | SubscribedButtonClick |
|---|---|
| dl | https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0 |
| rl | https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2 |
| if | false |
| ts | 1776459651723 |
| cd[buttonFeatures] | {"classList":"roomdetails ws-label-after ws-collapsible-header toggle","destination":"","id":"MyViewDetail_rptRooms_ctl05_aRoomDetails2","imageUrl":"","innerText":"VIEW ROOM DETAILS\nWYNN PANORAMIC VIEW TWO QUEENS","numChildButtons":0,"tag":"button","type":null,"name":"","value":""} |
| cd[buttonText] | VIEW ROOM DETAILS WYNN PANORAMIC VIEW TWO QUEENS |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Booking Rate Details | Wynn Las Vegas"} |

| ev | SubscribedButtonClick |
|---|---|
| dl | https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0 |
| rl | https://reservations.wynnlasvegas.com/ibe/index.aspx?hotelID=13763&langID=1&currID=0&checkIn=06/18/2026&checkOut=06/19/2026&rooms=1&adults=2 |
| if | false |
| ts | 1776459653929 |
| cd[buttonFeatures] | {"classList":"ws-button-small ws-tag ws-primary  wsViewRateRoom","destination":"https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0#ws-cart-view","id":"MyViewDetail_rptRooms_ctl05_buAdd","imageUrl":"","innerText":"BOOK NOW","numChildButtons":0,"tag":"a","type":"2","name":"Wynn Panoramic View Two Queens"} |
| cd[buttonText] | BOOK NOW |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Booking Rate Details | Wynn Las Vegas"} |

73. As shown by the green highlights in the above excerpts of the Website's transmissions, Meta intercepts and/or otherwise obtains the fact that users clicked to learn more about a particular room (here, "VIEW ROOM DETAILS"; "WYNN PANORAMIC VIEW TWO QUEENS"), and the fact that users selected that particular room (here, "BOOK NOW"). These communications are the product of button clicks on Website Screens 3A and 3B.

| ev | SubscribedButtonClick |
|---|---|
| dl | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| rl | https://reservations.wynnlasvegas.com/ibe/details.aspx?hotelID=13763&langID=1&rate=WEBRATES&corp=&currID=0&hgID=0 |
| if | false |
| ts | 1776459663937 |
| cd[buttonFeatures] | {"classList":"ws-upgrade-select","destination":"https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0#","id":"","imageUrl":"","innerText":"Select","numChildButtons":0,"tag":"a","type":null,"name":""} |
| cd[buttonText] | Select |

//

//

| id | 387109018144427 |
|---|---|
| ev | SubscribedButtonClick |
| dl | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0#dv Add on 0-2623 |
| rl | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| if | false |
| ts | 1776459673297 |
| cd[buttonFeatures] | {"classList":"buAdd ws-tag ws-primary","destination":"https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0#","id":"","imageUrl":"","innerText":"ADD","numChildButtons":0,"tag":"a","type":null,"name":""} |
| cd[buttonText] | ADD |

74.     As shown by the pink highlights in the above excerpts of the Website's transmissions, Meta intercepts and/or otherwise obtains the fact that users click to upgrade their room (here, "upgrade-select"; "Select"), and that users select an add on (here, "Addon"; "Add"). These communications are the product of button clicks on Website Screens 4B and 4C.

| cd[buttonFeatures] | {"classList":"ws-button ws-primary","destination":"https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0#","id":"buCheckout","imageUrl":"","innerText":"PROCEED TO CHECKOUT","numChildButtons":0,"tag":"a","type":null,"name":""} |
|---|---|
| cd[buttonText] | PROCEED TO CHECKOUT |
| cd[formFeatures] | [] |
| cd[pageFeatures] | {"title":"Review Your Booking Details | Wynn Las Vegas"} |

| id | 387109018144427 |
|---|---|
| ev | PageView |
| dl | https://reservations.wynnlasvegas.com/ibe/checkout.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| rl | https://reservations.wynnlasvegas.com/ibe/cart.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| if | false |
| ts | 1776459682588 |
| sw | 1920 |
| sh | 1080 |
| v | 2.9.300 |
| r | stable |
| ec | 0 |
| o | 12318 |
| fbp | fb.1.1776459619950.531548914478206395 |
| cs_est | true |
| ler | other |
| cdl | API_unavailable |
| pmd[title] | Payment Details | Wynn Las Vegas |

75.     As shown by the grey highlights in the above excerpts of the Website's transmissions, Meta intercepts and/or otherwise obtains that users click to proceed to the checkout screen (here,

"PROCEED TO CHECKOUT"; "InitiateCheckout") where they enter their payment details (here, "Payment Details | Wynn Las Vegas"). These communications are the product of button clicks on Website Screen 4A.

| id | 387109018144427 |
|---|---|
| ev | Purchase |
| dl | https://reservations.wynnlasvegas.com/ibe/confirm.aspx?hotelID=13763&langID=1&currID=0&crsID=4SZ732LBK |
| rl | https://reservations.wynnlasvegas.com/ibe/checkout.aspx?hotelID=13763&langID=1&hgID=0&currID=0 |
| if | false |
| ts | 1776459808263 |
| cd[content_type] | hotel |
| cd[checkin_date] | 2026-06-18 |
| cd[checkout_date] | 2026-06-19 |
| cd[content_ids] | PANDD |
| cd[city] | Las Vegas |
| cd[region] | Nevada |
| cd[country] | United States |
| cd[num_adults] | 2 |
| cd[num_children] | 0 |
| cd[rooms] | 1 |
| cd[value] | 628.13 |
| cd[currency] | USD |
| cd[order_id] | 4SZ732LBK |
| cd[content_name] | Wynn Panoramic Corner King |
| sw | 1920 |
| sh | 1080 |
| v | 2.9.300 |
| r | stable |
| ec | 1 |
| o | 12318 |
| fbp | fb.1.1776459619950.531548914478206395 |

| fbp | fb.1.1776459619950.531548914478206395 |
|---|---|
| cs_est | true |
| ler | other |
| cdl | API_unavailable |
| pmd[title] | Order Confirmation | Wynn Las Vegas |

76.    As shown by the purple highlights in the above excerpts of the Website's transmissions, Meta intercepts and/or otherwise obtains the fact that a user reached the confirmation page confirming their booking (here, "Order Confirmation | Wynn Las Vegas"), and also the confirmation number (here, "4SZ732LBK"). As shown by the light green highlight, Meta intercepts and/or otherwise obtains the particular room that the user paid for (here, the "Wynn Panoramic

Corner King). As shown by the dark green highlight, Meta intercepts and/or otherwise obtains the total price of the room, less tax and resort fee (here, "USD" "628.13", as in the price is $628.13). As shown by the red highlight, Meta intercepts and/or otherwise obtains the location of the hotel stay (here, "Las Vegas", "Nevada", "United States"). As shown by the yellow highlights, Meta intercepts and/or otherwise obtains the desired trip dates selected by users (here, "checkin_date…2026-06-18" and "checkout_date…2026-06-19"). As shown by the blue highlights, Meta intercepts and/or otherwise obtains the number of adults, children, and rooms (here, "num_adults…2"; "num_children…0"; "rooms…1"). These communications are the product of button clicks on Website Screen 5.

## VII.   Defendant Enables the Third Parties to *Pair* the Above Data with Users' Identities

77.   As discussed *supra* § V, the Snap, Google, and Meta tracking technologies at issue can *pair* wiretapped data with website users' identities—through their email addresses, phone numbers, and other identifying numbers tied to users' Snap, Google, and Meta accounts.

78.   The tracking technologies achieve this, at least in part, through cookies. A cookie is a "small text file (up to 4KB) created by a website that is stored in the user's computer either temporarily for that session only or permanently in storage (persistent cookie)."[57] Persistent cookies can be used to "track user behavior across different sites. They store information such as geographic location, device specifications, and specific actions taken on the website."[58]

### A.   Snap

79.   Through Snap cookies, Snap can identify individual website users by their respective Snapchat accounts. Through user parameters, Snap can also identify individual website users by the personal information they provide on websites (i.e., their email address and phone number).

80.   The following image confirms that, when a user accesses the Website while logged into Snapchat, the Snap tracking technologies on the Website compel that user's browser to transmit several cookies, including the sc-a-nonce, sc_at, and X-AB cookies:

---

[57] PC MAGAZINE, COOKIE TABLE, https://www.pcmag.com/encyclopedia/term/cookie.

[58] COOKIEBOT, WHAT ARE TRACKING COOKIES AND HOW DO THEY WORK?, https://www.cookiebot.com/en/tracking-cookies/.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| _sc-sid | 86fe1f22-7f84-... | .snapchat.com | / | 20... | 43 | ✓ | | | Me... |
| blizzard_client_id | 8a7441b8-f6ce... | .snapchat.com | / | 20... | 68 | | | | Me... |
| blizzard_web_sessio... | iWYHgpofH5Jlc... | .snapchat.com | / | 20... | 39 | | | | Me... |
| EssentialSession | true | .snapchat.com | / | 20... | 20 | ✓ | | | Me... |
| sc-a-nonce | ae44c3fd-6c99-... | .snapchat.com | / | 20... | 46 | ✓ | No... | | Me... |
| sc-dweb-allocation | 77 | .snapchat.com | / | 20... | 20 | ✓ | Lax | | Me... |
| sc-language | en-US | .snapchat.com | / | 20... | 16 | ✓ | | | Me... |
| sc-wcid | 86ec4bfb-955c... | .snapchat.com | / | 20... | 43 | ✓ | | | Me... |
| _scid | xu0wSYn_TZKJ... | .wynnlasvegas.com | / | 20... | 37 | | Lax | | Me... |
| _scid_r | 0G0wSYn_TZKJ... | .wynnlasvegas.com | / | 20... | 45 | | Lax | | Me... |
| _sctr | 1%7C17766576... | .wynnlasvegas.com | / | 20... | 22 | | Lax | | Me... |
| X-AB | 75ea247401c54... | sc-static.net | /s... | 20... | 36 | ✓ | No... | | Me... |
| OptanonConsent | isGpcEna... | .wynnlasvegas.com | / | 20... | 376 | | Lax | | Me... |
| personalization_id | "v1_vN0N... | .twitter.com | / | 20... | 47 | ✓ | No... | | Me... |
| SAPISID | aGuNPU3... | .google.com | / | 20... | 41 | ✓ | | | High |
| sc_at | v2|H4slA... | .snapchat.com | / | 20... | 104 | ✓ | No... | | Me... |

81. The sc-a-nonce cookie is for "[n]once control[,] [and is u]sed to encrypt session data."[59] The sc-a-nonce cookie has a lifetime of 1 year.[60]

82. The X-AB cookie "is used by the website's operator in context with multi-variate testing. This is a tool used to combine or change content on the website. This allows the website to find the best variation/edition of the site."[61] The X-AB cookie has a lifetime of 1 day.[62]

83. The sc_at marketing cookie is "[u]sed to **identify a visitor** across multiple domains" and has a lifespan of 1 year.[63]

84. Even when a when a user accesses the Website while not logged in to a Snapchat account, the Snap tracking technologies on the Website compel that user's browser to transmit several Snap cookies, including the X-AB and sc_at cookies:

//

//

//

//

---

[59] *Id.*

[60] SNAP, COOKIE INFORMATION, https://www.snap.com/privacy/cookie-information.

[61] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[62] *Id.*

[63] *Id.* (emphasis added).

| Name | Value | Domain | Path | Exp... | Size | Htt... | Sec... | Sa... | Par... | Cro... | Pri... |
|---|---|---|---|---|---|---|---|---|---|---|---|
| _sc-sid | 86fe1f22-7f84... | .snapchat.com | / | 20... | 43 | | ✓ | | | | Me... |
| _scid | xu0wSYn_TZKJ... | .wynnlasvegas.com | / | 20... | 37 | | | Lax | | | Me... |
| _scid | XPQdse6BWK... | .snapchat.com | / | 20... | 37 | | | Lax | | | Me... |
| _scid_r | ZXQdse6BWK... | .snapchat.com | / | 20... | 45 | | | Lax | | | Me... |
| _scid_r | 0m0wSYn_TZK... | .wynnlasvegas.com | / | 20... | 45 | | | Lax | | | Me... |
| _sctr | 1%7C1776657... | .wynnlasvegas.com | / | 20... | 22 | | | Lax | | | Me... |
| _sctr | 1%7C1776657... | .snapchat.com | / | 20... | 22 | | | Lax | | | Me... |
| NID | 530=QaIW7UI... | .google.com | / | 20... | 362 | ✓ | ✓ | No... | | | Me... |
| sc_at | v2|H4sIAAAAA... | .snapchat.com | / | 20... | 104 | | ✓ | No... | | | Me... |
| sc-cookies-accepted | true | .snapchat.com | / | 20... | 23 | | ✓ | | | | Me... |
| sc-dweb-allocation | 77 | .snapchat.com | / | 20... | 20 | | ✓ | Lax | | | Me... |
| sc-language | en-US | .snapchat.com | / | 20... | 16 | | ✓ | | | | Me... |
| sc-wcid | 86ec4bfb-955... | .snapchat.com | / | 20... | 43 | | ✓ | | | | Me... |
| TDCPM | CAESFQoGZ29... | .adsrvr.org | / | 20... | 265 | | ✓ | No... | | | Me... |
| X-AB | 75ea247401c5... | sc-static.net | /sc... | 20... | 36 | | ✓ | No... | | | Me... |

85.     As discussed in more detail *supra* ¶ 45, Defendant has also configured the Snap Pixel to collect "user parameter[s]"[64] for "PII matching"[65] – specifically, the hashed email address and hashed phone number user parameters.

86.     As highlighted in yellow below, Snap intercepts when Website users make a reservation on Screen 5. *See infra* ("Reserve Now").  Defendant has also configured the Snap Pixel to collect "user parameter[s]"[66] for "PII matching"[67]—specifically, the hashed email address and hashed phone number user parameters.  This is shown in the red highlights in the below excerpt of the Website's transmissions, in which Snap intercepts both "u_hem" (a hashed email address) and "u_hpn" (a hashed phone number).  Although the email and phone number are "hashed," the reality is that, even in hashed form, they are traceable to individuals.  *See infra* note 98.

//

//

//

//

---

[64] SNAP, DIRECTLY IMPLEMENT THE PIXEL ON YOUR WEBSITE, https://businesshelp.snapchat.com/s/article/pixel-direct-implementation.

[65] SNAP, PIXEL IMPLEMENTATION FAQS, https://businesshelp.snapchat.com/s/article/snap-pixel-faq.

[66] SNAP, DIRECTLY IMPLEMENT THE PIXEL ON YOUR WEBSITE, https://businesshelp.snapchat.com/s/article/pixel-direct-implementation.

[67] SNAP, PIXEL IMPLEMENTATION FAQS, https://businesshelp.snapchat.com/s/article/snap-pixel-faq.

```
▼ req: [{md: {btx: "Reserve Now", btc: "ws-button ws-primary",…}, del: 2065},…]
   ▼ 0: {md: {btx: "Reserve Now", btc: "ws-button ws-primary",…}, del: 2065}
      del: 2065
      ▼ md: {btx: "Reserve Now", btc: "ws-button ws-primary",…}
         btc: "ws-button ws-primary"
         ▼ btff: [{id: "savedemail", name: "savedemail", type: "email", placeholder: "", value: false},…]
            ▸ 0: {id: "savedemail", name: "savedemail", type: "email", placeholder: "", value: false}
            ▸ 1: {id: "txEmail", name: "txEmail", type: "email", placeholder: "Email Address", value: true}
            ▸ 2: {id: "txEmailAlt", name: "txEmailAlt", type: "email", placeholder: "", value: false}
         btx: "Reserve Now"
         ▼ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
            0: "5322c0e3-f882-47f6-88b2-0157342cf23c"
   ▼ 1: {pc: {av: 5, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}, del: 2028}
      del: 2028
      ▼ pc: {av: 5, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}
         av: 5
         ▸ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
         u_hems: "7796e98d130b6d87bccf1943142e3603e8ffc33993324e37663f9931e0e9ec48"
         u_hpns: "ffae6ce2bca944b044ef2a02490bd081f0ef76e39aad6aca61360f2cbaad1eb6"
   ▼ 2: {pc: {av: 1, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}, del: 46}
      del: 46
      ▼ pc: {av: 1, pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"],…}
         av: 1
         ▸ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
         u_hems: "7796e98d130b6d87bccf1943142e3603e8ffc33993324e37663f9931e0e9ec48"
         u_hpns: "ffae6ce2bca944b044ef2a02490bd081f0ef76e39aad6aca61360f2cbaad1eb6"
   ▼ 3: {md: {pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"], ps: false}, del: 0}
      del: 0
      ▼ md: {pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"], ps: false}
         ▸ pids: ["5322c0e3-f882-47f6-88b2-0157342cf23c"]
         ps: false
   u_scsid: "5dd4da7f-3afe-4117-a215-846fae2d8238"
```

87.    For example, Snap can simply match hashed email addresses and phone numbers collected from Website users with corresponding, non-hashed data associated with those users' Snapchat accounts. "To create a Snapchat account" users must entire their phone number or email address.[68]

**B.    Google**

88.    To pair wiretapped data with website users' identities, the Google Analytics identity spaces and Google signals rely, at least in part, on Google cookies.[69]  Together, the Google cookies

---

[68] *See* SNAPCHAT SUPPORT, HOW TO CREATE A SNAPCHAT ACCOUNT, https://help.snapchat.com/hc/en-us/articles/7012333136788-How-to-Create-a-Snapchat-Account ("To create a Snapchat account… Enter your phone number and verify it for account security… You can also tap 'sign up with email instead' if you don't want to use your phone number.").

[69] *See, e.g.*, GOOGLE, OUR ADVERTISING AND MEASUREMENT COOKIES, https://business.safety.google/adscookies/; GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://

---

allow Google Analytics to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite."[70]

89.    The following image confirms that, when a user accesses the Website while logged in to a Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the _Secure-3PAPISID; _Secure-3PSID; _Secure-3PSIDCC; _Secure-3PSIDTS; _Secure-3PSIDRTS; NID; _ga; _gcl_au; and IDE[71] cookies:

| Name | Value | Domain | Path | Ex... | Size | Htt... | Sec... | Sa... | Par... | Cro... | Pri... |
|---|---|---|---|---|---|---|---|---|---|---|---|
| IDE | AHWqTU... | .doubleclick.net | / | 20... | 70 | ✓ | ✓ | No... | | | Me... |
| _Secure-1PAPISID | AJm45-r... | .google.com | / | 20... | 51 | | ✓ | | | | High |
| _Secure-1PSID | g.a0009... | .google.com | / | 20... | 167 | ✓ | ✓ | | | | High |
| _Secure-1PSIDCC | AKEyXzX... | .google.com | / | 20... | 88 | ✓ | ✓ | | | | High |
| _Secure-1PSIDRTS | sidts-Cjc... | .google.com | / | 20... | 102 | ✓ | ✓ | | | | High |
| _Secure-1PSIDTS | sidts-Cjc... | .google.com | / | 20... | 101 | ✓ | ✓ | | | | High |
| _Secure-3PAPISID | AJm45-r... | .google.com | / | 20... | 51 | | ✓ | No... | | | High |
| _Secure-3PSID | g.a0009... | .google.com | / | 20... | 167 | ✓ | ✓ | No... | | | High |
| _Secure-3PSIDCC | AKEyXzV... | .google.com | / | 20... | 90 | ✓ | ✓ | No... | | | High |
| _Secure-3PSIDRTS | sidts-Cjc... | .google.com | / | 20... | 102 | ✓ | ✓ | No... | | | High |
| _Secure-3PSIDTS | sidts-Cjc... | .google.com | / | 20... | 101 | ✓ | ✓ | No... | | | High |
| _Secure-BUCKET | CMEC | .google.com | / | 20... | 19 | ✓ | ✓ | | | | Me... |
| AEC | AaJma5t... | .google.com | / | 20... | 62 | ✓ | ✓ | Lax | | | Me... |
| APISID | 5F40Qaj... | .google.com | / | 20... | 40 | | | | | | High |
| HSID | AiK0O3... | .google.com | / | 20... | 21 | ✓ | | | | | High |
| NID | 530=Mh... | .google.com | / | 20... | 349 | ✓ | ✓ | No... | | | Me... |
| SAPISID | AJm45-r... | .google.com | / | 20... | 41 | | ✓ | | | | High |
| SEARCH_SAMESITE | CgQI06AB | .google.com | / | 20... | 23 | | | Strict | | | Me... |
| SID | g.a0009... | .google.com | / | 20... | 156 | | | | | | High |
| SIDCC | AKEyXzV... | .google.com | / | 20... | 79 | | | | | | High |
| SSID | AE1tJ5Kj... | .google.com | / | 20... | 21 | ✓ | ✓ | | | | High |
| _Secure-STRP | AEEP7gJ... | .google.com | / | 20... | 113 | | ✓ | Strict | | | Me... |
| _fbp | fb.1.1776... | .wynnlasvegas.com | / | 20... | 41 | | | Lax | | | Me... |
| _ga | GA1.1.54... | .wynnlasvegas.com | / | 20... | 28 | | | | | | Me... |
| _ga_JBW99E9X19 | GS2.1.s1... | .wynnlasvegas.com | / | 20... | 59 | | | | | | Me... |
| _gcl_au | 1.1.3776... | .wynnlasvegas.com | / | 20... | 31 | | | | | | Me... |

//

//

---

developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage; OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[70] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

[71] Google appears as "DoubleClick" in the following image because DoubleClick was acquired by Google.  Google also owns the domain "doubleclick.net."  GODADDY.COM, WHOIS DATABASE, https://www.godaddy.com/whois/results.aspx?itc=dlp_domain_whois& domain=doubleclick.net.

90. The _Secure-3PAPISID is a marketing cookie that "[p]rofiles the interests of website visitors to serve relevant and personalised ads through retargeting" and has a lifespan of 2 years.[72]

91. The _Secure-3PSID cookie is a "[t]argeting cookie[ u]sed to profile the interests of website visitors and display relevant and personalised Google ads" and has a lifespan of 2 years.[73]

92. The _Secure-3PSIDCC and _Secure-3PSIDTS cookies are "[t]argeting cookie[s u]sed to **create a user profile** and display relevant and personalised Google Ads to the user."[74]  The _Secure-3PSIDCC and _Secure-3PSIDTS cookies have a lifespan of 2 years.[75]

93. The IDE marketing "cookie is used for targeting, analyzing and optimisation of ad campaigns in DoubleClick/Google Marketing Suite" and has a lifespan of 2 years.[76]

94. The _ga cookie is "**used to identify users**" and has a lifespan of 2 years.[77]

95. The _gcl_au marketing cookie is "[u]sed by Google AdSense for experimenting with advertisement efficiency across websites using their services" and has a lifespan of 3 months.[78]

96. The NID marketing cookie "is used to collect website statistics and track conversion rates and Google ad personalisation[,]" and has a lifespan of 1 year.[79]

97. Even when a when a user accesses the Website while not logged in to a Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the IDE; _ga; and _gcl_au cookies:

//

//

//

---

[72] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[73] *Id.*

[74] *Id.* (emphasis added).

[75] *Id.*

[76] *Id.*

[77] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html (emphasis added).

[78] *Id.*

[79] *Id.*

| Name | Value | Domain | ▼ Path | Exp... | Size | Htt... | Sec... | Sa... | Par... | Cro... | Pri... |
|---|---|---|---|---|---|---|---|---|---|---|---|
| X-AB | 75ea2474... | sc-static.net | /sc... | 20... | 36 | | ✓ | No... | | | Me... |
| _clck | oohy51%... | .wynnlasvegas.com | / | 20... | 32 | | | | | | Me... |
| _fbp | fb.1.1776... | .wynnlasvegas.com | / | 20... | 41 | | | Lax | | | Me... |
| _ga | GA1.1.546... | .wynnlasvegas.com | / | 20... | 28 | | | | | | Me... |
| _ga_JBW99E9X19 | GS2.1.s17... | .wynnlasvegas.com | / | 20... | 59 | | | | | | Me... |
| _gcl_au | 1.1.37767... | .wynnlasvegas.com | / | 20... | 31 | | | | | | Me... |
| _scid | xu0wSYn_... | .wynnlasvegas.com | / | 20... | 37 | | | Lax | | | Me... |
| _scid_r | 320wSYn_... | .wynnlasvegas.com | / | 20... | 45 | | | Lax | | | Me... |
| _sctr | 1%7C177... | .wynnlasvegas.com | / | 20... | 22 | | | Lax | | | Me... |
| _tt_enable_cookie | 1 | .wynnlasvegas.com | / | 20... | 18 | | | | | | Me... |
| _ttp | 01KPP59P... | .wynnlasvegas.com | / | 20... | 36 | | | | | | Me... |
| _twpid | tw.17767... | .wynnlasvegas.com | / | 20... | 41 | | ✓ | Strict | | | Me... |
| _uetsid | c60258e0... | .wynnlasvegas.com | / | 20... | 39 | | | | | | Me... |
| _uetvid | c602a760... | .wynnlasvegas.com | / | 20... | 39 | | | | | | Me... |
| OptanonAlertBoxClo... | 2026-04-... | .wynnlasvegas.com | / | 20... | 45 | | | Lax | | | Me... |
| OptanonConsent | isGpcEna... | .wynnlasvegas.com | / | 20... | 376 | | | Lax | | | Me... |
| ttcsid | 17767159... | .wynnlasvegas.com | / | 20... | 86 | | | | | | Me... |
| ttcsid_CAOV9G3C77... | 17767159... | .wynnlasvegas.com | / | 20... | 80 | | | | | | Me... |
| IDE | AHWqTU... | .doubleclick.net | / | 20... | 70 | ✓ | ✓ | No... | | | Me... |

98.     Defendant also uses Google signals, which "associates [data] with user[s'] … Google accounts," for "users who have signed in … [and] turned on Ads Personalization."[80]  The below image shows that Defendant enabled Google signals.

```
["map", "redactFieldGroup", "GOOGLE_SIGNALS", "disallowAllRegions", true, "disallowedRegions", ""]],
```

**C.     Meta**

99.     Through Facebook cookies, Meta can identify individual website users by their respective Facebook accounts.

100.     Through advanced matching, Meta can also identify individual website users by the personal information they provide on websites (i.e., name, email address, phone number, etc.).

101.     The following image confirms that, when a user accesses the Website while logged into Facebook, the Meta tracking technologies on the Website compel that user's browser to transmit the c_user; _datr; fr; ps_n; sb; xs; and _fbp[81] cookies:

---

[80] GOOGLE, [GA4] ACTIVATE GOOGLE SIGNALS FOR GOOGLE ANALYTICS PROPERTIES, https://support.google.com/analytics/answer/9445345.

[81] Note, the Meta Pixel uses both first- and third-party cookies.  A first-party cookie is "created by the website the user is visiting"—i.e., the Website. PC MAGAZINE, FIRST-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/first-party-cookie.  A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Facebook. PC

| Name | Value | Domain | Path | Expir... | Size | Ht... | Se... | Sa... | P.▲ | Cr... | Pri... |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ar_debug | 1 | .facebook.com | / | Sessi... | 9 | ✓ | ✓ | None | | | M... |
| c_user | 615689... | .facebook.com | / | 2027... | 20 | | ✓ | None | | | M... |
| datr | 6pDma... | .facebook.com | / | 2027... | 28 | ✓ | ✓ | None | | | M... |
| fr | 1OAtkc... | .facebook.com | / | 2026... | 122 | ✓ | ✓ | None | | | M... |
| presence | C%7B... | .facebook.com | / | Sessi... | 75 | | ✓ | | | | M... |
| ps_l | 1 | .facebook.com | / | 2027... | 5 | ✓ | ✓ | Lax | | | M... |
| ps_n | 1 | .facebook.com | / | 2027... | 5 | ✓ | ✓ | None | | | M... |
| sb | y3DWa... | .facebook.com | / | 2027... | 26 | ✓ | ✓ | None | | | M... |
| wd | 1920x9... | .facebook.com | / | 2026... | 10 | | ✓ | Lax | | | M... |
| xs | 47%3A... | .facebook.com | / | 2027... | 96 | ✓ | ✓ | None | | | M... |
| _fbp | fb.1.17... | .wynnresorts.com | / | 2026... | 41 | | | Lax | | | M... |
| _fbp | fb.1.17... | .tiktok.com | / | 2026... | 33 | | ✓ | None | | | M... |
| _fbp | fb.1.17... | .wynnlasvegas.com | / | 2026... | 41 | | | Lax | | | M... |

102. The c_user cookie contains, at least, the user's unencrypted Facebook ID.[82] The c_user cookie has a lifespan of three hundred sixty-five days.[83] The c_user marketing cookie is "[u]sed in conjunction with the xs cookie to authenticate your identity to Facebook. Contents: User ID[.]"[84]

103. The datr cookie contains, at least, a value that uniquely identifies a browser.[85] The datr cookie has a lifespan of four hundred days.[86]

104. The fr cookie contains, at least, a value that uniquely identifies a browser and the

---

MAGAZINE, THIRD-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/third-party-cookie. The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook. Pictured here and in the two images (*infra*) includes the _fbp cookie sent as a first-party cookie.

[82] MICROSOFT, COOKIE COMPLIANCE, https://learn.microsoft.com/en-us/dynamics365/commerce/cookie-compliance ("Cookie[:] c_user[.] Description[:] Cookie contains the user ID of the currently signed-in user.").

[83] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[84] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[85] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ ("'Datr' is a unique identifier for your browser[.]").

[86] *Id.*

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    42

user's encrypted Facebook ID.[87]  The fr has a lifespan of ninety days.[88] The fr marketing cookie "[c]ontains a unique browser and user ID, used for targeted advertising."[89]

105.    The _fbp cookie contains, at least, a value that uniquely identifies a browser.[90]  The _fbp has a lifespan of ninety days.[91]

106.    The xs marketing cookie is "[u]sed in conjunction with the c_user cookie to authenticate your identity to Facebook. Contents: Session ID, creation time, authentication value, secure session state, caching group ID" and has a lifespan of 90 days.[92]

107.    The sb marketing cookie is for "Facebook browser identification, authentication, marketing, and other Facebook-specific function[s]" and has a lifespan of 2 years.[93]

108.    When a Website visitor's browser has recently logged out of an account, Facebook still compels the visitor's browser to send the _fbp; datr; fr; and sb cookies:

//

//

//

//

//

---

[87] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf ("The first part of the cookie is a browser ID, used to identify the web browser. The second part of the cookie is an encrypted version of the logged in user's Facebook ID.").

[88] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[89] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[90] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ ("Cookie[:] _fbp[.] Description[:] These cookies identify browsers for businesses using our Meta Products for the purposes of providing advertising and site analytics services."). See also FACEBOOK, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/customer-information-parameters#fbp ("The Facebook browser ID value is stored in the _fbp browser cookie[.]").

[91] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[92] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[93] Id.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    43

| Name | Value | Domain | Path | Ex... | Size | Ht... | Se... | Sa... | Pa... | Cr... | Pri... |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ar_debug | 1 | .facebook.com | / | Se... | 9 | ✓ | ✓ | None | | | M... |
| datr | 6pDmaZqly... | .facebook.com | / | 20... | 28 | ✓ | ✓ | None | | | M... |
| fr | 1OAtkc6IxQ... | .facebook.com | / | 20... | 122 | ✓ | ✓ | None | | | M... |
| ps_l | 1 | .facebook.com | / | 20... | 5 | ✓ | ✓ | Lax | | | M... |
| ps_n | 1 | .facebook.com | / | 20... | 5 | ✓ | ✓ | None | | | M... |
| sb | y3DWaWbdr... | .facebook.com | / | 20... | 26 | ✓ | ✓ | None | | | M... |
| wd | 1920x911 | .facebook.com | / | 20... | 10 | | ✓ | Lax | | | M... |
| _fbp | fb.1.177638... | .wynnresorts.com | / | 20... | 41 | | | Lax | | | M... |
| _fbp | fb.1.177638... | .wynnlasvegas.com | / | 20... | 41 | | | Lax | | | M... |
| _fbp | fb.1.177643... | .tiktok.com | / | 20... | 33 | | ✓ | None | | | M... |

109.    Defendant also uses "Advanced Matching."  With Advanced Matching, Defendant's Meta Pixels "look for recognizable form field and other sources on [the] website that contain information such as first name, last name and email address."[94]  That information is recorded, "along with the event, or action, that took place."[95]

110.    Specifically, as part of Advanced Matching, Defendant enabled "Automatic Advanced Matching."  That means Defendant configured the pixel to scan form fields containing a user's email address, first name, last name, phone number, gender, zip code, city and state.[96]  The highlighted line below shows that Defendant enabled Automatic Matching.

//

---

[94] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

[95] *Id.*

[96] *See* META, ADVANCED MATCHING, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching; META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

111.    As a Meta article "explains [to websites like Wynn] how to manually implement advanced matching for tracked conversion events using the Meta Pixel," these selectedMatchKeys correspond with users' email addresses, first and last names, phone numbers, gender, zip code, city, and state. *See* META, ADVANCED MATCHING https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching/ (screenshot reproduced below).

//

112.    Wynn knowingly shared all this information with Meta.  The code on Wynn's website shows it implemented automatic advanced matching.

```
"387109018144427", "AutomaticMatchingForPartnerIntegrations", true);
```

113.    As Meta explains, in order for this to have happened, Defendant would have had to "Toggle ON the parameters you want to share from your website." META, SET UP AUTOMATIC ADVANCED MATCHING IN META EVENTS MANAGER, https://www.facebook.com/business/help/1993001664341800?id=1205376682832142  (screenshot below).

114.    In other words, for this to have happened, Defendant went into its Meta Events Manager account, and one by one, "toggle[d] ON" email, first name, last name, Phone Number, Gender, Zip Code, City, and State.

115.    Thus, Meta, as enabled by Defendant, contemporaneously intercepts users' names, email address, phone numbers, and/or other personal details using the Meta Pixel on various pages of the Website.  Although some of these personal details are "hashed,"[97] the reality is that, even in

---

[97] *Id.*

hashed form, they are traceable to individuals.[98]

116.    Defendant discloses this information to Meta so that Meta can better match Website visitors to their Facebook profiles, thereby helping Defendant "[i]ncrease the number of attributed conversions," "[i]ncrease [their] Custom Audience size," and "[d]ecrease the cost per conversion."[99]

## VIII.    The Third Parties Use Californians' Data for their Own Purposes

117.    When the Third Parties use their respective wiretaps on Website users' communications, the wiretaps are not like tape recorders or "tools" used by one party to record the other.    Instead, the Third Parties – separate and distinct entities from the parties to the conversations—use the wiretaps to eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties.    The Third Parties, themselves, collect the contents of said conversations.    That data is then analyzed by the Third Parties before being provided to any entity that was a party to the conversations (like Defendant).

118.    The Third Parties each have the capability to use the contents of conversations they collect through their respective wiretaps for their own purposes.

//

//

//

---

[98] *See, e.g.*, FEDERAL TRADE COMMISSION, DOES HASHING MAKE DATA "ANONYMOUS"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique … the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); FEDERAL TRADE COMMISSION, NO, HASHING STILL DOESN'T MAKE YOUR DATA ANONYMOUS, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous ("[H]ashes aren't 'anonymous' and can still be used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized."); STEVEN ENGLEHARDT ET AL., I NEVER SIGNED UP FOR THIS! PRIVACY IMPLICATIONS OF EMAIL TRACKING, https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy protection. This is folk knowledge in the security community, but bears repeating."); MARTECH, FTC PRIVACYCON: YOUR EMAIL ADDRESS IS LEAKING AND VULNERABLE, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] … Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[99] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                          47

### A.    Snap

119.    In its "Snap Conversion Terms,"[100] Snap confirms that it has the capability to use information it collects through its tracking technology—which Snap defines as "Event Data"[101]—for purposes other than recording it and conveying it to Defendant.  For example, "Snap and its affiliates may use Event Data to ... to provide insights; [and] to improve and supplement the Services (including to optimize Snap's targeting and ad effectiveness)[.]"[102]  The Snap Conversion Terms also confirm that Snap has the ability to share Event Data—i.e. Website users' wiretapped data—with *additional* third parties, including "to its affiliates, service providers, and agents to improve the Services; or ... as otherwise permitted under these Snap Conversion Terms."[103]

### B.    Google

120.    In its "Shared Data Under Measurement Controller-Controller Data Protection Terms," Google states: "When Google Analytics customers enable the data sharing setting for … Google Analytics[] and accept the 'Measurement Controller-Controller Data Protection Terms' … Google can access and analyze the Analytics data customers share with us to better understand online behavior and trends, and improve our products and services—for example, to improve Google search results, detect and remove invalid advertising traffic in Google Ads, and test algorithms and build models that power services like Google Analytics Intelligence that apply machine-learning to surface suggestions and insights for customers based on their analytics data and like Google Ads that applies broad models to improve ads personalization and relevance."[104]  Thus, Google has the capability to use the wiretapped data for understanding online behavior and trends, machine learning, and improving its products and services.

---

[100] SNAP, SNAP CONVERSION TERMS, https://www.snap.com/terms/snap-conversion (last accessed Apr. 20, 2026) The "Snap Conversion Terms ... govern the use of the Business Services for Snap's conversion program ... and are incorporated into the Business Services Terms." *Id.*

[101] *See id.* ("Snap Conversion enables Snap and its affiliates to receive data, including about actions taken on websites, apps, or in stores ('Event Data') through Snap tools like pixels, JavaScript SDKs, APIs, or cookies.").

[102] *Id.*

[103] *Id.* (emphasis added).

[104] GOOGLE, SHARED DATA UNDER MEASUREMENT CONTROLLER-CONTROLLER DATA PROTECTION TERMS, https://support.google.com/analytics/answer/9024351.

---

**C.      Meta**

121.    In its "Meta Business Tools Terms,"[105] Meta confirms that it has the capability to use information it collects for purposes other than recording it and conveying it to Defendant.  For instance, Meta can use the information it collects "to promote safety and security on and off the Meta Products, for research and development purposes and to maintain the integrity of and to provide and improve the Meta Products."[106]  Further, Meta can "disclose [] Campaign Reports or Analytics … to [] third part[ies,] … [if] they have been combined with Campaign Reports and Analytics from numerous other third parties and [the advertiser using the Meta Business Tools has had its] identifying information [] removed from the combined Campaign Reports and Analytics."[107]  And Meta can use the information it collects to "improve the effectiveness of ad delivery, [] determine the relevance of ads to people[,] … [and] personalize the features and content (including ads and recommendations) that [Meta] show[s] people on and off [] Meta Products."[108]  Thus, Meta has the capability to use the wiretapped data for purposes other than simply providing a recording to Defendant, including, but not limited to, its own research and development; ad delivery; feature and content personalization; and product improvement, provision, and securement.

## CLASS ALLEGATIONS

122.    Plaintiff seeks certification of the following class: all persons in the United States who, during the class period, accessed and navigated the Wynn Las Vegas Website (WynnLasVegas.com) (the "Class").

123.    Plaintiff seeks certification of the following subclass: all California residents who have accessed and navigated the Wynn Las Vegas Website (WynnLasVegas.com) while in California (the "Subclass").

124.    Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

---

[105] META, META BUSINESS TOOLS TERMS, https://m.facebook.com/legal/businesstech.
[106] *Id.*
[107] *Id.*
[108] *Id.*

125.    The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

126.    **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands of persons.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

127.    **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated CIPA §§ 631 and 632, whether Defendant violated the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, and whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

128.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited the Website and had her confidential electronic communications intercepted and disclosed to the Third Parties.

129.    **Adequate Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately

protected by Plaintiff and her counsel.

130.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 631(a)**
**(On Behalf of Plaintiff and the California Subclass)**

131.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

132.    Plaintiff brings this Count individually and on behalf of the members of the Class.

133.    CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).  Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

134. CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

135. The Third Parties' tracking technologies are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

136. Each of the Third Parties is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, the Third Parties have the capability to use the wiretapped information for their own purposes. Accordingly, Snap, Google, and Meta were third parties to any communication between Plaintiff and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

137. At all relevant times, by their tracking technologies, the Third Parties willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Class Members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

138. At all relevant times, the Third Parties used or attempted to use the communications intercepted by their tracking technologies for their own purposes.

139. At all relevant times, Defendant aided, agreed with, employed, permitted, or otherwise enabled the Third Parties to wiretap Plaintiff and Class Members using the Third Parties' tracking technologies and to accomplish the wrongful conduct at issue here.

140. Plaintiff and Class Members did not provide their prior consent to the Third Parties' intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Class Members' electronic communications. Nor did Plaintiff and Class Members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling the Third Parties' conduct.

141. The wiretapping of Plaintiff and Class Members occurred in California, where Plaintiff and Class Members accessed the Website and where the Third Parties – as enabled by Defendant – routed Plaintiff's and Class Members' electronic communications to the Third Parties' servers.

142. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

**COUNT II**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 632**
**(On Behalf of Plaintiff and the California Subclass)**

143. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

144. Plaintiff brings this Count individually and on behalf of the members of the Class.

145. CIPA § 632(a) prohibits an entity from:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

146.    The Third Parties' tracking technologies are "electronic amplifying or recording device[s]." *Id.*

147.    Cal. Civ. Code § 53.5(a) states:

> [A]n innkeeper, hotelkeeper, motelkeeper, lodginghouse keeper, or owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations, or any employee or agent thereof, who offers or accepts payment for rooms, sleeping accommodations, or board and lodging, or other similar accommodation, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order.

148.    Per Cal. Civil Code § 53.5(c):

> "Guest record" for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number.

149.    Here, Website users' communications with Defendant – made while browsing and booking Wynn hotel stays via the Website – contain sensitive and confidential "guest records," as defined by Cal. Civil Code § 53.5.

150.    First, the communications include "record[s] that identif[y] an individual[.]" Cal. Civil Code § 53.5(c). Defendant enables Snap to identify individual Website users with Snapchat cookies and user parameters, such that Snap can identify individual website users by their respective Snapchat accounts and by the personal information they provide on the website, which in this case, includes the email addresses and phone numbers they input while booking a room at a Wynn hotel. Defendant enables Google to identify individual Website users with Google Analytics identity spaces – a combination of user IDs, user-provided data (i.e., contact details like email address, phone number, name, and/or address, etc.), device IDs, and/or machine learning-based behavioral modeling – and Google signals (which associates web browsing activity with users' Google accounts). Defendant also enables Meta to identify individual Website users through advanced matching, by which Meta records the contact details Website users provide on the Website (i.e., name, email

address, phone number, etc.). These pieces of data collected by Snap, Google, and Meta constitute "record[s] that identif[y] an individual" (Cal. Civil Code § 53.5(c)), as the cookies and other IDs at issue contain "unique identifying number[s]" assigned to Website users (*id.*) and the contact details (i.e., name, email address, phone number, etc.) at issue are sufficient to identify individuals. *Id.*

151. Second, Website users' communications with Wynn "identif[y] an individual [as a Wynn] guest, boarder, occupant, lodger, customer, or invitee[.]" *Id.* The Third Parties intercept Website users' button clicks selecting the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the numbers of guests who will be traveling, and the particular tower and room type in which they wish to stay. The Third Parties also intercept certain URL of webpages visited by Website users containing the foregoing communications. These communications "identif[y] an individual [as a Wynn] guest, boarder, occupant, lodger, customer, or invitee" (Cal. Civil Code § 53.5(c)) because they show that all Website users are "invitees" of Wynn – individuals with "express or implied invitation to enter or use [Wynn's] premises."[109] These communications also identify certain Website users (those who complete the booking process) as Wynn hotel "guests" and "customers."

152. Thus, the Third Parties – as aided by Defendant – intercepted "guest records," which are confidential, under Cal. Civil Code § 53.5. Moreover, none of the Third Parties is a legitimate "third-party service provider," as defined by Cal. Civil Code § 53.5(f), because none of the Third Parties is "an entity contracted to provide services outlined in [a] contract [with Wynn] that has no independent right to use or share the data beyond the terms of the contract." Rather, the Third Parties have the capability to use the information they wiretap for purposes other than simply providing a recording to Defendant. Therefore, Defendant's conduct here at issue was not permitted by Cal. Civil Code § 53.5(i).

153. When communicating with Defendant, Plaintiff and Class Members had an objectively reasonable expectation of privacy, based on Cal. Civil Code § 53.5. Thus, Plaintiff and Class Members did not reasonably expect that anyone other than Defendant would be on the other end of the communication, and that other, third-party entities like Snap, Google, and Meta, would

[109] INVITEE, Black's Law Dictionary (11th ed. 2019).

intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

154. Plaintiff and Class Members did not consent to any of the Third Parties' actions. Nor have Plaintiff or Class Members consented to the Third Parties' intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

155. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

**COUNT III**
**Violation of the Federal Wiretap Act,**
**18 U.S.C. § 2510, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

156. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this Count individually and on behalf of the members of the Class.

157. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(a).

158. Further, the Federal Wiretap Act makes it unlawful for a person to intentionally disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(c).

159. Further, the Federal Wiretap Act makes it unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(d).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    56

160.    The Federal Wiretap Act protects both the sending and receiving of communications.

161.    Among other ways, a violation of the Federal Wiretap Act occurs if a person:

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; [or]
>
> (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication[.]

18 U.S.C. § 2511.

162.    Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

163.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally procured third-parties Snap, Google, and Meta to intercept and endeavor to intercept the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential PII and guest records of Plaintiff and Class Members via the Website. At all relevant times, Defendant knew that by integrating and embedding Snap's, Google's, and and Meta's tracking technologies, Snap, Google, and Meta would intercept the electronic communications of users of the Website.

164.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally intercepted, and endeavored to intercept, the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential PII and guest records of Plaintiff and Class Members via the Website.

165.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c), Defendant disclosed, and endeavored to disclose, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, marketing and advertising based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein. Indeed,

Defendant procured Snap, Google, and Meta to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

166. In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(d), Defendant used, and endeavored to use, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, marketing and advertising based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein. Indeed, Defendant procured Snap, Google, and Meta to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

167. The following items constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

(a) The codes and programs Snap, Google, and Meta used to track Plaintiff's and Class Members' communications while they were navigating the Website;

(b) Plaintiff's and Class Members' browsers and mobile applications;

(c) Plaintiff's and Class Members' computing and mobile devices;

(d) The codes and programs used by Snap, Google, and Meta to effectuate their tracking and interception of Plaintiff's and Class Members' communications while they were using a browser or application to visit Defendant's Website; and

(e) The plan Snap, Google, and Meta carried out to effectuate their tracking and interception of the Plaintiff's and Class Members' communications while they were using Defendant's Website.

168. The guest records communication information that Defendant permitted Snap, Google, and Meta to intercept, and that Defendant otherwise disclosed to Snap, Google, and Meta, via Defendant's integration of the Snap, Google, and Meta tracking technologies on the Website— including but not limited to: namely, the location (*e.g.*, Las Vegas, Nevada), the name of the particular Wynn hotel (*e.g.*, Wynn Las Vegas), the desired trip dates (*e.g.*, June 18, 2026 to June 19, 2026), the number of rooms and guests (*e.g.*, one room, two guests), the particular room rate (*e.g.*,

Flexible Getaway Rate), the room type (*e.g.*, Panoramic View Two Queens), upgrades and/or add-ons selected by users (*e.g.*, Late Checkout) and the fact that users actually booked a hotel stay, along with the price of the hotel stay—constitutes the contents of electronic communication because it includes detailed URL requests and/or button clicks that contain information Plaintiff and the Classes actively inputted into the Website.

169.    The transmissions described above were "transfer[s] of signs, signals, writing, … data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetics, photoelectronic, or photooptical system that affects interstate commerce[,]" and were therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

170.    Snap, Google, and Meta were not authorized parties to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other, because Plaintiff and Class Members did not know that these third parties were surreptitiously intercepting the data at issue and did not knowingly send any communications to Snap, Google, and Meta.

171.    Plaintiff and Class Members did not consent to Defendant's conduct of: (1) procuring Snap, Google, and Meta to intercept and endeavor to intercept their confidential communications; (2) intercepting their confidential communications; (3) disclosing their confidential communications under circumstances that violated the Federal Wiretap Act; and (4) using their confidential communications under circumstances that violated the Federal Wiretap Act.

172.    Defendant intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State—namely, violation of the California Guest Records Privacy Statute, Cal. Civil Code § 53.5(a).

173.    The California Guest Records Privacy Statute prohibits disclosing or otherwise communicating all or any part of a guest record to a third party (except to a California peace officer) without a court-issued subpoena, warrant, or order.  *See* Cal. Civil Code § 53.5(a).

174.    Specifically, Cal. Civ. Code § 53.5(a) states:

> [A]n innkeeper, hotelkeeper, motelkeeper, lodginghouse keeper, or owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations, or any employee or agent thereof, who offers or accepts

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                         59

payment for rooms, sleeping accommodations, or board and lodging, or other similar accommodation, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order.

175.    The California Guest Records Privacy Statute defines "[g]uest record" as:

**[A]ny** record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, **including, but not limited to**, their name, social security number **or other unique identifying number**, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number.

Cal. Civil Code § 53.5(c) (emphasis added).

176.    Here, Website users' communications with Defendant—made while browsing and booking hotel stays via the Website—contain sensitive and confidential "[g]uest records," as defined by Cal. Civil Code § 53.5(c).

177.    The Third Parties intercept Website users' button clicks selecting the location (*e.g.*, Las Vegas, Nevada), the name of the particular Wynn hotel (*e.g.*, Wynn Las Vegas), the desired trip dates (*e.g.*, June 18, 2026 to June 19, 2026), the number of rooms and guests (*e.g.*, one room, two guests), the particular room rate (*e.g.*, Flexible Getaway Rate), the room type (*e.g.*, Panoramic View Two Queens), upgrades and/or add-ons selected by users (*e.g.*, Late Checkout) and the fact that users actually booked a hotel stay, along with the price of the hotel stay.

178.    First, these communications are records that "identif[y] an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their *name, ... other unique identifying number*, … [or] *telephone number*…." *Id.* (emphasis added). As explained *supra* § VII, the Snap, Google, and Meta tracking technologies at issue can pair wiretapped data with website users' identities through various ways.

179.    Defendant enables Snap to identify individual Website users with Snapchat cookies and user parameters, such that Snap can identify individual website users by their respective Snapchat accounts and by the personal information they provide on  the website, which in this case, includes the email addresses and phone numbers they input while booking a room at a Wynn hotel.

*See supra* ¶¶ 79-87.

180.    Defendant also enables Google to identify individual Website users through Google cookies, Google Analytics identity spaces – a combination of user IDs, user-provided data (i.e., contact details like email address, phone number, name, and/or address, etc.), device IDs, and/or machine learning-based behavioral modeling – and Google signals (which associates web browsing activity with users' Google accounts).  *See supra* ¶¶ 88-98.

181.    Defendant also enables Meta to identify individual Website users through Facebook cookies and advanced matching, such that Meta can identify individual website users by their respective Facebook accounts and by the personal information they provide on website, which in this case, includes the names, email addresses, and phone numbers they input while booking a room at a Wynn hotel.  *See supra* ¶¶ 99-116.

182.    Because these identifying pieces of information are sent in addition to the fact that particular website user has actually paid for a particular room at a particular Wynn hotel, they thereby "identif[y] an individual [as a Wynn] guest, boarder, occupant, lodger, customer, or invitee" per Cal. Civil Code § 53.5(c).  *See supra* § III.

183.    When users book a room through the WynnLasVegas.com website, the communications show that all Website users are "invitees" of Wynn—individuals with "express or implied invitation to enter or use [Wynn] premises."[110]    Defendant owns the domain "wynnlasvegas.com[.]"[111]  Defendant's hotel website operates as the digital equivalent of a physical hotel lobby; Website users who enter WynnLasVegas.com to inquire about availability and book a stay parallels walking through the front doors of a physical Wynn location (i.e. Wynn Las Vegas) to ask about room options.  Users entrust their guest records to Defendant online just as they would offline.

184.    These communications also identify Website users who actually completed the

---

[110] INVITEE, BLACK'S LAW DICTIONARY (11th ed. 2019).

[111] *See* https://www.godaddy.com/whois/results.aspx?itc=dlp_domain_whois&domainName=wynnlasvegas.com (Defendant "WYNN RESORTS HOLDINGS, LLC" is listed as the "Registrant Contact[.]").

booking process (such as Plaintiff) as Wynn hotel "guests" and/or "customers."

185. Defendant was not acting under color of law in intercepting and endeavoring to intercept Plaintiff's and Class Members' communications.

186. Moreover, neither of the Third Parties is a legitimate "third-party service provider," as defined by Cal. Civil Code § 53.5(f), because neither of the Third Parties is "an entity contracted to provide services outlined in [a] contract [with Wynn] that has no independent right to use or share the data beyond the terms of the contract." Rather, the Third Parties have the capability to use the information they wiretap for purposes other than simply providing a recording to Defendant. Therefore, Defendant's conduct here at issue was not permitted by, *inter alia*, Cal. Civil Code § 53.5(i).

187. Defendant, Snap, Google, and Meta intercepted and endeavored to intercept the communications of Plaintiff and Class Members made via the Website while those communications were in transit, as opposed to being in storage. Indeed, Defendant, Snap, Google, and Meta intercepted and endeavored to intercept the communications of Plaintiff and Class Members in real time and contemporaneously with Plaintiff and Class Members engaging in those communications.

188. After intercepting the communications, Snap, Google, and Meta used the contents of the communications to provide Defendant with analytics, marketing, and advertising services, as well as for their own business purposes.

189. As a result of the above actions, Plaintiff and Class Members have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications in violation of 18 U.S.C. § 2520. As such, Plaintiff and Class Members are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

//

//

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendant's conduct violates the statute referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  May 1, 2026                    Respectfully submitted,

**BURSOR & FISHER, P.A**.


By:___*/s/ Philip L. Fraietta*_____
                Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*