LATHAM & WATKINS LLP
Serrin Turner (*PHV Pending*)
*serrin.turner@lw.com*
Ben Harris (Bar No. 338340)
*ben.harris@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Bradley M. Baglien (*PHV Pending*)
*brad.baglien@lw.com*
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Telephone: +1.312.876.7700

*Attorneys for Defendant*
*Wynn Resorts Holdings, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELENA NACARINO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WYNN RESORTS HOLDINGS, LLC,<br><br>Defendant. | Case No. 3:26-cv-03963-WHO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 9, 2026<br>Time: 2 p.m.<br>Courtroom: 2, 17th Floor<br>Before: Hon. William H. Orrick |

**NOTICE OF MOTION AND MOTION**

TO THIS HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on September 9 at 2:00 pm at the courtroom of the Honorable William H. Orrick, Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Wynn Resorts Holdings, LLC will and hereby does move the Court to dismiss with prejudice all claims brought by Plaintiff Elena Nacarino ("Plaintiff"), pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Defendant's Request for Judicial Notice, the Declarations of Arun Tanpanuwat and Serrin Turner in support of this Motion and Exhibits A through H attached thereto, all pleadings and records on file in this action, and such further argument and evidence as may be presented at or before the hearing.

Respectfully submitted,

Dated: August 3, 2026

LATHAM & WATKINS LLP

By /s/ *Serrin Turner*

LATHAM & WATKINS LLP
Serrin Turner (*PHV Pending*)
*serrin.turner@lw.com*
Ben Harris (Bar No. 338340)
*ben.harris@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Bradley M. Baglien (*PHV Pending*)
*brad.baglien@lw.com*
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Telephone: +1.312.876.7700

*Attorneys for Defendant*
*Wynn Resorts Holdings, LLC*

# TABLE OF CONTENTS

INTRODUCTION ....... 1

STATEMENT OF ISSUES TO BE DECIDED ....... 3

BACKGROUND ....... 3

A. Wynn's Website and Guests' Consent to Its Use of Tracking Technologies ....... 3

B. Wynn's Alleged Use of Tracking Technologies ....... 4

LEGAL STANDARD ....... 7

ARGUMENT ....... 8

I. PLAINTIFF FAILS TO ADEQUATELY ALLEGE STANDING ....... 8

II. PLAINTIFF FAILS TO ADEQUATELY ALLEGE PERSONAL JURISDICTION ....... 11

III. PLAINTIFF FAILS TO STATE A CLAIM ....... 14

A. All of Plaintiff's Claims Fail Because She Consented to the Alleged Tracking ....... 14

B. Plaintiff's CIPA Section 631(a) Claim Fails ....... 16

1. Plaintiff Does Not Adequately Allege the Third Parties "Read" Data While In Transit ....... 17

2. Plaintiff Does Not Adequately Allege Interception of "Contents" ....... 18

3. Plaintiff Does Not Adequately Allege the Third Parties Intentionally Collected Sensitive Information ....... 20

C. Plaintiff's CIPA Section 632 Claim Fails ....... 22

D. Plaintiff's Wiretap Act Claims Fail ....... 23

1. Wynn's Consent Defeats the Wiretap Act Claim ....... 23

2. The Wiretap Act Does Not Provide for Aiding-and Abetting Liability ....... 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Agensys, Inc. v. Regents of Univ. of California*,
2024 WL 5679162 (C.D. Cal. Oct. 22, 2024)....7

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....16

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014)....14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....7

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025)....22

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) (en banc)....12

*Calder v. Jones*,
465 U.S. 783 (1984)....12

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....7

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011)....13

*Coyoy v. City of Eloy*,
859 F. App'x 96 (9th Cir. 2021)....14

*Crano v. Sojern*,
2025 WL 2689267 (N.D. Cal. Sep. 19, 2025)....10, 18

*Crano v. Sojern, Inc.*,
2026 WL 1670136 (N.D. Cal. June 9, 2026)....9, 11

*Dish Network L.L.C. v. Innertra PC*,
2026 WL 622699 (N.D. Cal. Mar. 5, 2026)....13

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025)....20

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................20, 21, 22

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................1, 17, 18

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................21

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ....................10

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....................21

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) ....................25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................11

*Holden v. Hagopian*,
978 F.2d 1115 (9th Cir. 1992) ....................8

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................25

*In re Yahoo Mail Litig.*,
7 Supp. 3d 1016 (N.D. Cal. 2014) ....................23

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................18

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ....................24

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................14, 15

*King v. Hard Rock Café International (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................19

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ....................25

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................14, 15

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................17

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. Jul. 8, 2024)....16

*M.D. v. Google LLC*,
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025)....16

*MAI Sys. Corp. v. UIPS*,
856 F. Supp. 538 (N.D. Cal. 1994)....11

*Mikulsky v. Bloomingdale's LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....19

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026)....25

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018)....10

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)....24

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....8, 9, 11

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)....16

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015)....7

*Ribas v. Clark*,
38 Cal.3d 355 (Cal. 1985)....16

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021)....23, 24

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)....7

*Shah v. Hilton Worldwide Holdings, Inc.*,
2025 WL 1683577 (N.D. Cal. June 11, 2025)....12, 13

*Sisti v. Bosley Inc.*,
2026 WL 1223927 (C.D. Cal. Apr. 27, 2026)....15, 16

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....14

*Smith v. YETI Coolers, LLC*,
2025 WL 877127 (N.D. Cal. Mar. 14, 2025)....21

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................21, 22

*Snyder v. G6 Hosp. LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025)....................14, 16

*Snyder v. G6 Hospitality LLC*,
2025 WL 1254382 (C.D. Cal. Apr. 14, 2025) ....................10

*So v. Hyatt Hotels Corp.*,
2026 WL 1235036 (N.D. Ill. May 5, 2026)....................10, 24

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ....................7

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ....................10

*Sussman v. ABC, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................24

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................17

*TBG Ins. Servs. Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002) ....................22

*Torres v. Prudential Fin. Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................7

*Washington v. Flixbus, Inc.*,
2025 WL 1592961 (S.D. Cal. June 5, 2025)....................16

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ....................17

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ....................11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................19

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024)....................23

## STATUTES

18 U.S.C.
§ 2511(1)(c) ....................24
§ 2511(1)(d) ....................24
§ 2511(2)(d) ....................14, 23, 24
§ 2520....................25

Cal. Civ. Code
§ 53.5.................... *passim*
§ 53.5(a) ....................10, 24
§ 53.5(c) ....................10

Cal. Penal Code
§ 631(a) .................... *passim*
§ 632.................... *passim*
§ 632(c) ....................22

## RULES

Rule 12(b)(1)....................3, 7

Rule 12(b)(2)....................3, 7

Rule 12(b)(6)....................3, 7

## INTRODUCTION

Plaintiff shopped for a hotel room on Wynn's website and, in doing so, would have agreed to terms informing her that the site used third-party technologies to track user actions for analytics and advertising purposes. Yet she now seeks to use decades-old "wiretapping" laws to sue Wynn for "aiding" those third parties by virtue of using of those disclosed technologies. Other courts in this District have recognized that "using a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025). This Court should not "contort [itself] to fit" the allegations here into statutes that were drafted to address starkly different conduct. Plaintiff's claims suffer from numerous defects and should be dismissed.

*First*, this Court lacks Article III jurisdiction. The Ninth Circuit has made clear that generalized privacy harms are not sufficient for standing. A plaintiff relying on a privacy harm must instead allege a highly offensive intrusion of a kind traditionally cognizable at common law. Plaintiff's allegations fall far short of that standard: The mere booking of a hotel reservation is not highly sensitive information, and the sharing of such information with analytics or marketing partners does not amount to the sort of embarrassing or reputationally harmful disclosure that could give rise to a common-law privacy injury. Plaintiff's attempt to leverage California's "guest records" law—Civil Code Section 53.5—does not change that conclusion. The statute is not apposite in the first place, as the data allegedly transmitted by Wynn's website to third parties does not contain a guest's identity (and Wynn is not even a California hotelkeeper subject to the law). But even if the statute did apply here, it does not affect the standing analysis. The legislature cannot manufacture Article III harms. The common law supplies the standard for the Article III inquiry—not present-day statutory requirements.

*Second*, this Court lacks personal jurisdiction. Plaintiff does not adequately allege—as she must—that Wynn expressly aims its conduct at *Californians*. Wynn is a Nevada corporation with its principal place of business in Nevada, and Plaintiff merely alleges that Wynn operates a generally accessible website where prospective guests from anywhere in the world can book rooms. Nothing about that conduct suggests that Wynn targeted Plaintiff individually or that Wynn

otherwise directs its conduct to California. Other courts in the District have concluded they lack personal jurisdiction when faced with similar allegations, and this Court should follow their lead.

*Third*, beyond these jurisdictional defects, Plaintiff fails to state a claim. Most significantly, consent defeats her claims across the board. Although Plaintiff tries to conceal her consent by selectively omitting part of the checkout page she would have seen in completing a hotel booking, a *full* screenshot of the page—which the Court can consider under the incorporation-by-reference doctrine—shows that Plaintiff had to agree to Wynn's terms and conditions in booking a room. Those terms include privacy policies that expressly disclose that Wynn shares users' browsing activity with third parties for analytics and advertising purposes. Plaintiff's consent to those policies is reason alone to dismiss the complaint in its entirety.

Dismissal on the merits is warranted for claim-specific reasons too. Plaintiff claims that Wynn aided violations of the California Invasion of Privacy Act (CIPA) and the federal Wiretap Act, but her allegations do not show that any third party committed a predicate violation that Wynn could have "aided." As for Plaintiff's claim under CIPA Section 631, she fails to allege that any third party read communications while "in transit," intercepted the "contents" of communications, or *intentionally* collected sensitive or confidential information without consent—all of which are required to establish a violation of the provision. Plaintiff's Section 632 claim fails because she does not and cannot allege that her communications were "confidential" within the meaning of the statute. Finally, Plaintiff's Wiretap Act claim fails because, under the statute's one-party consent rule, *Wynn*'s consent to the alleged data collection suffices to defeat Plaintiff's claim, and in any event the statute does not provide for secondary liability under an aiding-and-abetting theory.

In short, Plaintiff attempts to invent Article III harms where none exist; she sues a Nevada company in California based on its mere passive operation of a website; she tries to conceal her consent to the conduct at issue by omitting key content from a screenshot in her Complaint; and she aims to inflate the scope of the wiretapping laws far beyond their intended bounds. The Court should reject this contrived and overreaching lawsuit and dismiss the Complaint with prejudice.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Complaint should be dismissed under Rule 12(b)(1) for lack of Article III standing.

2. Whether the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

3. Whether the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.

## BACKGROUND[1]

### A. Wynn's Website and Guests' Consent to Its Use of Tracking Technologies

Wynn Resorts Holdings, LLC ("Wynn") is a Nevada corporation with its principal place of business in Las Vegas. ¶ 8. It operates the website for the Wynn Las Vegas resort, WynnLasVegas.com, where users can book rooms at the resort. ¶ 36. Plaintiff, a California resident, alleges she booked a room through the website on or about May 18, 2025. ¶ 6–7.

The Complaint includes a series of screenshots reflecting the web pages and "button clicks" a user must navigate to book a room. ¶¶ 36–40. The flow is what one would expect of any hotel booking site: the user clicks on their dates of travel, selects the type of room they want, and then must enter their contact/billing information and complete the booking by clicking "RESERVE NOW." *Id.* However, while the Complaint purports to provide an accurate depiction of this user flow, one of the Complaint's screenshots is cropped so as to omit an important detail: On the page asking for the user's contact/billing information ("Checkout Page"), right above the "RESERVE NOW" button (which is also omitted from Plaintiff's screenshot due to the way it is cropped), there is a checkbox stating "I agree to the **terms & conditions**," with the underlined phrase hyperlinked. *Compare* ¶ 40 ("Screen 5") *with* Ex. A. Only if the user clicks on the checkbox can they proceed to make a reservation. Ex. A; *see also* Tanpanuwat Decl. ¶ 8.

[1] Unless otherwise indicated, the facts recited herein are based on the Consolidated Class Action Complaint ("Complaint") and are accepted as true only for purposes of this motion. Cites to the Complaint are designated with paragraph marks. All exhibits cited are attached to the Declarations of Arun Tanpanuwat and Serrin Turner filed with the Request for Judicial Notice ("RJN") accompanying this motion.

The hyperlinked terms and conditions ("Terms") incorporate Wynn's Privacy Policy by reference, explaining that the policy "outlines the information Wynn Resorts will collect and how that information will be used," and providing a link where the user can read the full policy. Ex. B; *see also* Tanpanuwat Decl. ¶ 9; RJN at 4-6. The Privacy Policy in turn informs users, among other things, that "[w]e collect information from or about you at many, diverse points of interaction with Wynn Services, such as when you make an online … booking for our hotels or entertainment venues." Ex. C at 3. The Privacy Policy details various categories of information that Wynn may "collect and share," including with "analytics" and "marketing partners," which include "website visit information," "products you viewed or searched for," and "page interaction information (such as scrolling, clicks, and mouse-overs)." *Id.* at 5. The Privacy Policy also states that Wynn uses user information "[a]s described in our Cookie Notice"—with "Cookie Notice" in blue font that serves as a hyperlink to the document. *Id.* at 6; *see also* Tanpanuwat Decl. ¶ 10. The Cookie Notice goes on to explain "[t]he types of cookies and similar tracking technologies used by us and third party partners" on Wynn's websites, which include "pixels" that Wynn uses "to learn whether you have clicked on certain web content." Ex. D. at 2. The Notice likewise explains that "[w]e allow third party companies, including advertising companies and social media partners to place cookies on our Sites," which "enable such companies to track your activity across various sites where they display ads and record your activities so they can show ads on our site and other sites that they consider relevant to you as you browse the Internet." *Id.* The Notice instructs users that, if they wish to disable these cookies, they can do so "by using the privacy preference center on our Sites or changing the settings in your browser." *Id.* at 3–4.

**B. Wynn's Alleged Use of Tracking Technologies**

Notwithstanding that Plaintiff would have had to agree to the foregoing disclosures in booking a room, Plaintiff brings this putative class action complaining that Wynn uses tracking technologies to collect users' booking information and share it with third-party advertising and social-media companies, including Snap, Meta, and Google (the "Third Parties"), without obtaining the users' consent. ¶¶ 1–4. According to the Complaint, this information qualifies as "guest records" that California law prohibits "hotelkeepers" from sharing, ¶ 3 (citing Cal. Civ.

Code § 53.5)—although there is no allegation that the law in question even applies to hotelkeepers outside California like the Wynn Las Vegas resort. Nor does Plaintiff purport to sue under Section 53.5—which does not provide a private cause of action.[2] Instead, Plaintiff brings claims under the California Information Privacy Act and the federal Wiretapping Act, alleging that Wynn "aids, agrees with, employs, or otherwise enables" the Third Parties to "wiretap" users' communications.

The Complaint spends many paragraphs describing how information is allegedly transmitted to the Third Parties by the Wynn website. Amidst the details, four important points stand out for purposes of this motion.

First, the data allegedly transmitted does not include information identifying the user. While the Complaint alleges that the website transmits various information about the user's booking to the Third Parties, it does not allege the information includes the user's name, email address, phone number, or other contact or billing information. ¶¶ 58–76. At most, the Complaint alleges that Snap receives a "hashed" version of the user's email and phone number, which is a lengthy string of gibberish substituting for the underlying information (e.g., "7796e98d130b6d87bccf1943142e3603e8ffc33993324e37663f9931e0e9ec48") ¶ 62 & n.56. In other words, Snap "obtains *the fact that* users enter their personal information"—but the personal information itself is not transmitted. ¶ 62. The Complaint goes on to allege that Snap, Meta, and Google may be able to identify users based on information they may obtain elsewhere—including through accounts the user may have with Snap, Meta, or Google, which they may be able to pair to the user based on cookies they have installed on the user's browser. ¶¶ 77–116. But the user is not alleged to be identified in the data transmitted by the Wynn website itself.

Second, while the Complaint alleges that users' "communications" are "duplicated and sent to the Third Parties at the same time as they are being sent to Defendant," ¶ 42, there is no allegation that the Third Parties actually *read* any information about the user's booking at the same time it is transmitted to Wynn. The Complaint merely alleges the information is "intercept[ed],"

[2] The California Legislature specifically stripped a private cause of action from Section 53.5 in 2018. *See* S. Rules Comm., Senate Floor Analyses, at 2, Cal. S.B. 1194 (Aug. 28, 2018) (noting that the assembly amended S.B. 1194 to "remove the private right of action to enforce the provisions of the bill").

*id.*—i.e., received—by the Third Parties at the same time as it is transmitted to Wynn. Any substantive processing or analysis of the data—such as efforts to use the data for targeted advertising purposes—necessarily occurs only subsequently. *See* ¶ 117 (alleging that the Third Parties "collect" the data transmitted by Wynn and that the "data is *then* analyzed by the Third Parties").

Third, the data allegedly transmitted does not consist of a copy of a communication actually entered by the user, like a copy of a query a user might type into a search engine. While the Complaint asserts that the Wynn website causes the user's "communications" to be "duplicated and sent to the Third Parties," ¶ 42, the exemplar screenshots in the Complaint make clear that the data transmitted consists of *records generated by the website* about the user's actions. ¶¶ 58–76. For example, if the user clicks on June 18-19 as the dates for their desired stay, the website allegedly transmits data to Snap containing the notation: "btx: 'CHECK INCHECK OUT406/18/20260-406/19/2026', btc: Ns-calendar-dates." ¶¶ 58–59. This notation is of course not entered by the user, but instead is a record created by the website reflecting the fact that the user selected these dates from a dropdown menu on the page. Likewise, the user's selection of a particular room results in data being sent containing a notation such as "btx: 'VIEW ROOM DETAILS \nWYNN PANORAMIC VIEW TWO QUEENS." This is not a notation typed by the user, but rather is a record generated by the website as "the product of button clicks" by the user. ¶ 60. Thus, the transmissions at issue do not constitute simple "duplication" of a user's "communications," comparable to recording someone speak; rather, they are comparable to notes taken by someone else while watching them act.

Fourth, while the Complaint characterizes the information transmitted to the Third Parties as "sensitive and confidential 'guest records'" that are specially protected under California law, nowhere does the Complaint allege that the Third Parties have any intention or desire to receive "sensitive" information from partner websites such as Wynn. To the contrary, the relevant policies of the Third Parties—which the Complaint selectively cites—make clear that each does *not* seek to collect such "sensitive" or legally protected data. Exs. E, F, G, H; *see also* RJN at 6-8. Snap's Personal Data Terms, which apply to website developers who "provide or make available any

personal data to Snap … , including by enabling Snap to receive personal data through Snap tools like pixels," requires that developers "comply with Applicable Law," that any "personal data" they transmit "will not contain . . . any sensitive information or special category data," and that the developer has "secured, and will maintain, all necessary rights, licenses and consents required to provide or make available the personal data." *Id.* Ex. F at 2. Meta's Business Tools Terms likewise prohibit developers from sending any "sensitive" information to Meta and require developers to have all "necessary rights and permissions and a lawful basis" to transmit data using the Meta pixel. *Id.* Ex. H at 2. And Google's Terms of Service provide that developers like Wynn "will have and abide by an appropriate Privacy Policy and will comply with all applicable laws, policies, and regulations relating to the collection of information from Users." *Id.* Ex. G at 4.

## LEGAL STANDARD

**Rule 12(b)(1):** "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Intangible harms such as invasions of privacy are only sufficiently "concrete" where they have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). "As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that they have standing." *Id.* 430–31.

**Rule 12(b)(2):** "[T]he plaintiff bears the burden of establishing that [personal] jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "A plaintiff may not simply rest on the 'bare allegations of [the] complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

**Rule 12(b)(6):** A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court is not "required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Moreover, "when specific facts alleged in a complaint contradict general, conclusory allegations, the specific facts are controlling" *Agensys, Inc. v. Regents of Univ. of California*, 2024 WL

5679162, at *4 (C.D. Cal. Oct. 22, 2024) (internal quotation marks omitted); *see also Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir. 1992) (explaining that courts must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff").

**ARGUMENT**

## I. PLAINTIFF FAILS TO ADEQUATELY ALLEGE STANDING

The Complaint fails at the threshold for lack of standing, because Plaintiff fails to show she "has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

Plaintiff alleges that Wynn "tortiously violated Plaintiff's and Class Members' privacy through its collection, maintenance, and sale of valuable personal data from California consumers." ¶ 12. But asserting generalized harms is not enough—the inquiry instead "look[s] to the *specific* underlying harm experienced by the plaintiff and compare[s] it, in detail, to a *specific* common law tort." *Popa*, at 153 F.4th at 791 (emphasis in original). And "there existed no free-roaming privacy right at common law." *Id.* at 792. While the common law recognized the torts of "intrusion upon seclusion" and "public disclosure of private facts," these torts require an interference with one's private affairs or a disclosure of information "of a kind that would be highly offensive to a reasonable man"—such as someone taking pictures of another through their bedroom window with a telescopic lens, or publishing without consent a picture of a woman nursing her child. *Id.* at 791.

No analogous harm is alleged here. Instead, Plaintiff merely alleges that information about a hotel room booking—consisting simply of the type of room reserved and the dates of the stay—was shared with third-party advertising partners. That does not amount to the sort of intrusion into or public airing of intimate aspects of one's life that would be "highly offensive to a reasonable man." *Popa* is illustrative. There, the plaintiff alleged the collection of "over 30 different categories" of information about their activity while visiting a pet-supplies website. *Id.* at 786. Those included all of the user's "screen swipes," "text inputted," and other actions taken by the user on the site. *Id.* The court found that this tracking was not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law.'" *Id.* at 791. Rather

than involving any "embarrassing, invasive, or otherwise private information," such as "sensitive medical or financial information," the court explained that "the monitoring of [the plaintiff's] interactions with [the defendant's] website seems most similar to a store clerk's observing shoppers." *Id.*. Such collection of the plaintiff's "pet-store preferences" was not enough to create a cognizable harm. *Id.* at 792.

So too with hotel-room preferences. A person's room selection at a hotel is not remotely comparable to "sensitive medical or financial information," and the collection or sharing of that information is not "closely analogous" to any type of "highly offensive" privacy intrusion that would have given rise to a claim under common law. *Id.* 791. Judge Corley's recent decision in *Crano v. Sojern, Inc.*, 2026 WL 1670136 (N.D. Cal. June 9, 2026) ("*Crano*"), is directly on point. Just as here, the plaintiff there challenged the use of tracking technologies on a hotel website, which shared booking information with a third party for, "among other things, targeted advertising." *See id.* at *1. Similar to the information at issue here, the information there allegedly included "hotel room price, number of rooms, check in date, check out date, and the fact that Plaintiff Crano completed her Reservations." *Id.* at *3. Likewise, the information did *not* contain the plaintiff's name or identity, but at most included "unique identifying numbers associated with [] Crano." *Id.* On these facts, Judge Corley dismissed for lack of standing, finding that the plaintiff "identifies no embarrassing, invasive, or otherwise private information" as required under *Popa*. *Id.* Indeed, given that the data transmitted by the tracking pixel did not identify the plaintiff beyond a pseudonymous number, Judge Corley found that the plaintiff had not even alleged that "the tracking pixel actually collected Plaintiff's *personal* information." *Id.* Her holding applies equally to the virtually identical facts alleged here.

Plaintiff cannot rely on California Civil Code Section 53.5 to somehow transform the sharing of hotel booking information into a "highly offensive" intrusion of the sort actionable at common law—for two reasons. First, the statute is not even applicable here to begin with. It defines a "guest record" to "include[] any record that *identifies* an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number,

driver's license number, or other official form of identification, credit card number, or automobile license plate number." *Id.* § 53.5(c). The information allegedly transmitted by Wynn's website does not "identify" the guest making the reservation; it only reflects that *some user* has done so. Judge Corley found Section 53.5 inapposite for that very reason in *Crano*. *See Crano v. Sojern*, 2025 WL 2689267, at *8 (N.D. Cal. Sep. 19, 2025) (finding that plaintiff had not alleged facts sufficient to show that booking information transmitted by website "constitute[d] a guest record under Section 53.5(c)"). While Plaintiff alleges the Third Parties may subsequently be able to "pair" the data transmitted by Wynn to the user's accounts with those Third Parties—based on *additional* information the Third Parties *independently* have—the data actually disclosed by the Wynn website does not itself include the user's identity, and thus does not constitute a "guest record" within the meaning of the statute. *See So v. Hyatt Hotels Corp.*, 2026 WL 1235036, at *4 (N.D. Ill. May 5, 2026) (finding that the "more natural reading" of Section 53.5 is that it covers only "records that reveal the identity of an individual guest," and that "booking information that contains no identifiers would not seem to violate the statute simply because it could be paired with other identifying information"); *Snyder v. G6 Hospitality LLC*, 2025 WL 1254382, at *4 (C.D. Cal. Apr. 14, 2025) (rejecting argument that booking information constituted guest record under Section 53.5 because Meta allegedly could pair the information to the user's Facebook ID, explaining: "it is not Motel 6 conveying the Facebook ID, or for that matter conveying anything else specified in the statute's list of guest records.").[3]

---

[3] The application of Section 53.5 is further questionable here because the Wynn Las Vegas resort does not operate in California; it operates in Nevada. Given California's "strong presumption against" the extraterritorial application of its statutes, *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129–30 (N.D. Cal. 2014), there is no reason to construe the statute as extending to hotelkeepers outside the state's borders. *See, e.g.*, *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (explaining that California statutes "ordinarily … have no force beyond its boundaries"); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1198 (2011) (explaining that California law is not generally meant to "follow California residents wherever they go throughout the United States"). Indeed, the legislative history of the statute cited in the Complaint indicates it only applies to "businesses" that "Californians" visit when they "leave their homes to … stay at lodging establishments *throughout their state*." ¶ 27(g) (quoting California S.B. 1194 (Sep. 27, 2018) (emphasis added)). Similarly, the statute carves out the provision of hotel records to "a California peace officer," Cal. Civ. Code § 53.5(a)—which only makes sense if the businesses subject to the law are within the jurisdiction of a California peace officer, i.e., are located in California.

Second, even if Section 53.5 were applicable here, it would not matter because the Article III inquiry is governed not by recently enacted regulatory requirements, but by whether the "plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa*, 153 F.4th at 791. *Popa* squarely rejected the notion that "because the legislature enacted a statute protecting a substantive privacy right, any plaintiff alleging a violation of that statute will satisfy Article III." *Id.* at 792; *see also MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 541 (N.D. Cal. 1994) ("[A] state legislature may not waive by statute the prudential or constitutional limitations on standing in federal court and, by way of a state-created right, confer an Article III injury where none would otherwise exist."). Plaintiff cites the legislative history of Section 53.5 as endorsing a "right of privacy" that includes "the ability of individuals to control the use of their personal information." ¶ 27. But, as Judge Corley held in *Crano*, no such broad "right of privacy" exists at common law. *See* 2026 WL 1670136, at *3 ("Neither trespass nor the right to control information concerning his or her person are among those identified by *Popa*."). Accordingly, no alleged infringement of such a right—or a statutory obligation based on it—can supply the concrete harm needed for standing.

## II. PLAINTIFF FAILS TO ADEQUATELY ALLEGE PERSONAL JURISDICTION

Personal jurisdiction can either be general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction allows courts to hear "any and all claims" against defendants that are "essentially at home in the forum State." *Id.*. But Plaintiff admits that Wynn is not at home in California: Wynn is both incorporated and maintains its principal place of business in Nevada. ¶ 8. As a result, Plaintiff must show that this Court can exercise specific jurisdiction over Wynn.

To establish specific jurisdiction, a plaintiff must generally show: "(1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (internal quotation marks omitted). Where, as here, a plaintiff asserts "privacy and data use violations," courts typically

"analyze whether the tort was purposefully directed to the forum state," a test that "requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (en banc); *see also Calder v. Jones*, 465 U.S. 783, 784–90 (1984). An "interactive platform," like a website, "'expressly aims' its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous." *Briskin*, 135 F.4th at 758 (internal quotations marks omitted). It is not enough that a website is merely accessible in the state; "'something more' than mere passive nationwide accessibility [is] required to show express aiming at the forum state." *Id.* at 752.

*Briskin* is illustrative. There, the defendant, Shopify, an e-commerce platform that facilitates payments for online merchants, was alleged to have "installed tracking cookies" onto the device of the plaintiff, who was located in California. 135 F.4th at 747. The court found that the alleged facts were sufficient to establish the "something more" needed because Shopify's conduct in California was not "mere happenstance arising from the California consumers' choice to do business with a merchant that has contracted with Shopify." *Id.* at 756. Rather, the plaintiff alleged that "while knowing that the device [plaintiff] was using to shop was located in California, Shopify surreptitiously implanted cookies that permanently remained on [plaintiff's] device, tracked its physical location, and collected data regarding [plaintiff's] online shopping activity." *Id.* 746. Plaintiff further alleged that the Shopify "used the resulting data to compile a consumer profile that Shopify marketed widely, including to many California merchants." *Id.* "Thus, critically, the plaintiff in *Briskin* alleged both that the defendant targeted a California consumer and then used the consumer's data to further target businesses in California." *Shah v. Hilton Worldwide Holdings, Inc.*, 2025 WL 1683577 at *2 (N.D. Cal. June 11, 2025).

Here, Plaintiff's barebones personal jurisdiction allegations do not establish any similar fact pattern. The Complaint generally alleges that Wynn "reached into and targeted California in connection with marketing, promoting and otherwise *making available* hotel booking services" to Californians. ¶¶ 11–12 (emphasis added). These allegations fail to show that Wynn *expressly* targeted *Californians*. At most, they show that Wynn operates a website that is generally accessible

where anyone in the country can book a room at Wynn's Las Vegas resort, and that Wynn collected information from users, including Californians, when they visited the site. That is not enough to show that Wynn expressly aimed its activities at California.

*Shah* is on point, as it dismissed a complaint against a hotel chain for lack of personal jurisdiction in circumstances similar to those here. The plaintiffs in *Shah* asserted personal jurisdiction based on allegations that Hilton's website "allowed 'shopping for and leasing of rooms in hotels throughout California'" and that "Hilton admits to selling California users' personal information and using Californians' data for marketing and advertising purposes." 2025 WL 1683577 *1–2. The court rejected those rationales. None of the claims related to any connection between Hilton and its agreements with hotels in California. *See id.* at *1. And as for the argument concerning the collection of Californians' data and using it for advertising purposes, the court found that "[p]laintiffs d[id] not allege that [Hilton] collects data directly," but rather alleged that Hilton's website "'include[s] resources and programming scripts from *third parties* that enable *those parties*" to track their activity for advertising purposes. *Id.* at *2. There were "no allegations that Hilton [] knew the location of particular devices" while "installing … tracking software," nor any "allegations that Hilton [] compiled data on any particular California consumer and 'marketed' that profile to California merchants." *Id.* Thus, the court found *Briskin* distinguishable and declined to base personal jurisdiction simply on "Defendant's operation of [its] website." *Id.* at *1–2.

As in *Shah*, Plaintiff here relies merely on Wynn's passive operation of its website as the basis for personal jurisdiction. Even after *Briskin*, that is not enough. *See Dish Network L.L.C. v. Innertra PC*, 2026 WL 622699 at *3 (N.D. Cal. Mar. 5, 2026) (dismissing on personal jurisdictional grounds where the record showed "that while Defendants operated an international website that could facilitate transactions within the United States, they did not make a conscious effort to cater to United States customers"); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075–76 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result.").

## III. PLAINTIFF FAILS TO STATE A CLAIM

### A. All of Plaintiff's Claims Fail Because She Consented to the Alleged Tracking

Consent is an absolute defense to both Plaintiff's CIPA claims and her wiretapping claim. The relevant portions of CIPA impose liability only where a person acts "without consent." Cal. Penal Code § 631(a); Cal. Penal Code § 632 (prohibiting intentional eavesdropping "without the consent of all parties"); *see also Smith v. Facebook*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (explaining that lack of consent defeats claims under CIPA Sections 631 and 632) (citing cases). Similarly, "consent of one of the parties to the communication [is] sufficient to preclude liability under the Wiretap Act." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1045 (N.D. Cal. 2014); *see also* 18 U.S.C. § 2511(2)(d) (no liability where "one of the parties to the communication has given prior consent"). Courts routinely dismiss CIPA and Wiretap Act claims based on consent at the motion-to-dismiss stage. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (dismissal appropriate as to CIPA and Wiretap Act claims where the plaintiffs "consented to, and were informed of, the use of cookies and pixels on the Website"); *Snyder v. G6 Hosp. LLC*, 2025 WL 2426613 at *5 (C.D. Cal. Aug. 18, 2025) (dismissing CIPA claims without leave to amend based on consent).

Here, Plaintiff expressly consented to Wynn's use of third-party tracking technologies—which the Court can infer from materials incorporated by reference, notwithstanding Plaintiff's artful attempt to avoid acknowledging her consent. The Complaint alleges that Plaintiff booked a room through Wynn's website and includes screenshots of the web pages Plaintiff would have been shown in making the booking, including the Checkout Page. However, the Complaint crops the Checkout Page so as to omit key content reflecting that the user must "agree" to Wynn's "terms & conditions" to complete the reservation. Under the incorporation by reference doctrine, the Court is entitled to review the *full* web page referenced, just as if it were "part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018). Likewise, the Court "need not credit as true allegations in the complaint that are contradicted by" the full document. *Coyoy v. City of Eloy*, 859 F. App'x 96 (9th Cir. 2021). This "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those

very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002; *see* RJN 3-7. Accordingly, notwithstanding Plaintiff's conclusory allegation that Wynn "failed to obtain [Plaintiff's] consent" before sharing her booking information with the Third Parties, the Court can and should disregard that allegation if it conflicts with the specific content Plaintiff omitted from the webpage she herself references. *See Sisti v. Bosley Inc.*, 2026 WL 1223927, at *5 (C.D. Cal. Apr. 27, 2026) (considering full version of "scheduling page" at issue in wiretapping case, where the complaint included screenshots of the page, but those screenshots "omitted the textual notice Bosley provides on that webpage about its privacy policy and terms of service").

The omitted content does indeed conflict with Plaintiff's allegations that Wynn failed to obtain her consent. The "terms & conditions" linked to on the Checkout Page incorporate Wynn's Privacy Policy and the Cookie Notice in turn, which thus also form part of the content Plaintiff has selectively omitted. *See* RJN at 4-6. And the Privacy Policy and Cookie Notice specifically disclose Wynn's use of the types of tracking technologies at issue. They explain, among other things, that: Wynn collects information about website visitors, including when they make hotel bookings; Wynn uses the information it collects "to provide you with information and ads tailored to your needs, browsing activities and interests"; Wynn shares information with "analytics" and "marketing partners" that includes users' website interactions and the products they view; Wynn's website makes use of "cookies and similar technologies used by us *and third parties*"; and Wynn specifically allows "third party companies, including advertising companies and social media partners to place cookies on our Sites," which "enable such companies to track your activity" for targeted advertising purposes. Exs. C & D.

Plaintiff thus consented to "disclosures [that] 'explicitly notify' users of the practice at issue." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1055 (N.D. Cal. 2025) (dismissing based on consent). A reasonable user reviewing these disclosures would have understood that the actions they take on the site—including booking a hotel room reservation—could be shared with marketing partners, and that the website uses third-party tracking technologies specifically designed to allow those third parties to track user activity on Wynn's site and other sites for advertising purposes. Because the materials incorporated by reference establish that Plaintiff

consented to the conduct at issue, her claims are barred in their entirety. *See Snyder*, 2025 WL 2426613, at *4 (dismissing similar case based on plaintiff's consent to hotel's privacy policies: "A reasonable Motel 6 user would have understood that Motel 6's data collection included the dates of the trip, number of guests, and username," and further that such "personal information" could have been "shared with third-party . . . providers."); *see also Sisti*, 2026 WL 1223927, at *6 (dismissing based on notice of terms in webpage incorporated by reference: "the notice explicitly notified Plaintiff and other website visitors they manifested their assent to the Terms of Service and the Privacy Policy by submitting the scheduling form — which is exactly what Plaintiff alleges he did"); *see generally Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. Jul. 8, 2024) ("[B]ecause Facebook's data policy gives clear notice that third party partners may share data with Facebook, [the plaintiff] did not have a reasonable expectation of privacy in this information."); *M.D. v. Google LLC*, 2025 WL 2710095 *5 (N.D. Cal. Sept. 23, 2025) (dismissing based on consent to privacy policy); *Washington v. Flixbus, Inc.*, 2025 WL 1592961, *5–6 (S.D. Cal. June 5, 2025) (same).

**B. Plaintiff's CIPA Section 631(a) Claim Fails**

Even putting Plaintiff's consent aside, her Section 631(a) claim fails for additional, claim-specific reasons. Because Wynn cannot intercept its own communications[4], Plaintiff necessarily relies on a derivative theory of liability. She alleges that Wynn "aids, agrees with, employs, or otherwise enables the Third Parties to eavesdrop on those confidential communications using the Third Parties' respective wiretaps." ¶ 34; *see also id.* ¶ 58–76 (alleging that Wynn enables third-party tracking); ¶ 139 (similar). This theory depends on a "'predicate violation'" of CIPA by the Third Parties. *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (quoting *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024)). Plaintiff fails to allege a viable predicate violation, for three separate and independent reasons: (1) the Third Parties are not plausibly alleged to have "read" the information transmitted to them while it was "in transit" to Wynn; (2) the information transmitted did not consist of the "contents" of

[4] *See Ribas v. Clark*, 38 Cal.3d 355, 360 n.3 (Cal. 1985) ("Section 631 does not penalize the secret recording of a conversation by one of the *participants*.")

user communications; and (3) even indulging Plaintiff's theory that the information transmitted constituted "sensitive and confidential 'guest records'" collected without her consent, ¶ 28, there is no allegation that the Third Parties *intended* to receive such information.

**1. Plaintiff Does Not Adequately Allege the Third Parties "Read" Data While In Transit**

The first reason that Plaintiff cannot establish predicate liability under CIPA § 631(a) is that Plaintiff does not allege facts sufficient to show the Third Parties "read, or attempt[ed] to read, or to learn the contents or meaning of any message, report, or communication, while the same [was] in transit." Cal. Penal Code § 631(a).[5] "Courts in the Ninth Circuit have interpreted the in transit requirement narrowly." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023). That is for good reason: CIPA is a criminal statute, and "[w]hen courts are called upon to interpret ambiguous criminal statutes in California, the rule of lenity applies—even when the statute is being invoked in a civil action." *Eating Recovery*, 806 F. Supp. 3d at 1112.

To allege that communications are read in transit, it is not enough that "the *interception* happens simultaneously or near-simultaneously." *Id.* at 1116 (emphasis added). "[T]hat is, you have to do something more than just intercept the contents of the communication or redirect them to yourself during the virtually infinitesimal amount of time it takes for the communication to travel from the website visitor to the website operator." *Id.* Instead, the party intercepting the communication must "'read' the communication while it is in transit." *Id.* "Reading or learning the contents of a communication requires 'some efforts at understanding the substantive meaning' of the communication." *Id.* at 1117 (quoting *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024)). Thus, "[e]ven if [third-party] software intercepts the contents of Plaintiff['s]

[5] CIPA provides three routes to predicate liability: (1) "intentionally tap[ing] . . . any . . . wire, line, cable, or instrument," (2) "willfully and without consent . . . read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," or (3) "us[ing] or attempt[ing] to use, in any manner . . . any information so obtained." Cal. Penal Code § 631(a). Only the second clause matters here: Plaintiff does not allege any third party "tapped" any physical device, *see Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023), and liability under the third clause requires "a violation of the second" clause, *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109, 1115 (N.D. Cal. 2025).

communications in real time," there must be a separate allegation that the third-party "reads or attempts to read the contents of the communication while they are in transit." *Torres v. Prudential Fin. Inc.*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025).

Plaintiff does not allege that any Third Party *read* her communications while "in transit." She alleges only that the Third Parties' trackers "cause the browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers." ¶ 42. In other words, Plaintiff merely alleges that the Third Parties "just intercept the communication while it is in transit" to Wynn; there is no allegation of "something more" that could constitute actually *reading* the communication, such as substantively analyzing its contents for use in website analytics or targeted advertising. *Eating Recovery*, 806 F. Supp. 3d at 1117; *Torres*, 2025 WL 1135088, at *5–7. To the contrary, the Complaint acknowledges that any *use* of the data by the Third Parties only occurs—necessarily—*after* they have received it. *See* ¶ 117 ("The Third Parties, themselves, collect the contents of said conversations. That data is *then* analyzed by the Third Parties [for their own advertising purposes] before being provided to any entity that was a party to the conversations (like Defendant) [for analytics purposes].").

Plaintiff's failure to allege the facts necessary to show that any third party "read, or attempt[ed] to read, or to learn the contents" of any communication while "in transit" dooms her Section 631(a) claim. *See Crano*, 2025 WL 2689267, at *7 (finding that the plaintiff had "not alleged the information is intercepted while in transit" and therefore "fail[ed] to state a claim under Section 631(a)").

**2. Plaintiff Does Not Adequately Allege Interception of "Contents"**

Plaintiff also fails to sufficiently allege a predicate violation of Section 631(a) because the Third Parties are not plausibly alleged to have intercepted the contents of any communication by Plaintiff. Cal. Penal Code § 631(a). "Contents" refers to the "intended message conveyed by [a] communication" and is distinct and separate from "record information regarding the characteristics of [a] message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

Here, while Plaintiff makes conclusory allegations that "the Third Parties' tracking technologies … duplicate the user's Website communications," the specific screenshots the Complaint provides of the data transmitted to the Third Parties demonstrate that this is an oversimplified and inaccurate description. The screenshots do not show the duplication of a communication sent by the user—such as a copy of a text message the user typed. Instead, they show lines of code generated by the trackers, which reflect "button clicks" and other actions taken by the user on the website. ¶¶ 58–62 (Snap), 63–69 (Google), 70–76 (Meta). Rather than being akin to a recording of a conversation, these records instead are—to borrow *Popa*'s analogy—akin to a store clerk's notes of what products the shopper has looked at and put in their basket. That is, the data consists of a third-party-generated record of what the user *did*, as opposed to a verbatim transcription of anything the user *said*. *See Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (concluding that "'button clicks' . . . are more akin to the 'record' information that the Ninth Circuit has held not to be contents of a communication"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (concluding that "'keystrokes, mouse clicks'" and the like are not "pieces of data constitut[ing] message content in the same way that the words of a text message or an email do" for purposes of Section 631(a)).

*King v. Hard Rock Café International (USA), Inc.*, 2025 WL 1635419 (E.D. Cal. June 9, 2025), is particularly apt. There, as here, the plaintiff "argue[d] that she [] pled the 'contents' of her communications were intercepted because she allege[d] Meta received information regarding her 'button clicks,'" and that such clicks "convey 'the destination to which [Website users] wish to travel, the desired dates for their trip, the number of rooms they require, the number of adults and children who will be traveling, and the particular hotel section or tower in which they wish to stay." *Id.* at *4. Citing *In re Zynga*, *Mikulsky*, and *Yoon*, the court disagreed, finding that the information collected constituted "record information" and not contents under Section 631(a). *Id.* The court emphasized the lack of any allegations that the plaintiff had entered any "search queries" that had been collected. *Id.* So too here: Plaintiff hinges her interception theory on collection of information generated by the third-party trackers based on "button clicks" and user actions; she

alleges nothing suggested any Third Party intercepted any contents of communications she sent to Wynn.

### 3. Plaintiff Does Not Adequately Allege the Third Parties Intentionally Collected Sensitive Information

Finally, Plaintiff fails to allege a predicate violation of Section 631(a) because she fails to allege any intentional violation of the statute by the Third Parties. "CIPA liability only extends to willful or intentional conduct." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) . To allege the requisite intent CIPA requires, the question "is not whether" the Third Parties "intended to collect any old communication." *Doe I v. Google LLC*, 2025 WL 1616720 at *2 (N.D. Cal. June 6, 2025). Instead, "[t]he question is whether [they] intended to collect the *kinds* of communications at issue in this lawsuit." *Id.* (emphasis added).

Plaintiff's theory is that Wynn violated CIPA by "fail[ing] to obtain consumers' consent before enabling the Third Parties to intercept their confidential hotel booking communications," which Plaintiff argues are "sensitive and confidential" because they allegedly constitute "guest record" information protected by Section 53.5. As explained above, that characterization of the information at issue is wrong; but assuming arguendo that it is accurate, and that the information was indeed "guest record" information that is "sensitive and confidential," the problem for Plaintiff is that she alleges no facts sufficient to show that the Third Parties "*intended* to collect [those] kinds of communications." *Google LLC*, 2025 WL 1616720, at *2. While Plaintiff generically alleges that "[t]he Third Parties each have the capability to use contents of conversations they collect through their respective wiretaps for their own purposes," ¶ 118, nowhere does Plaintiff allege that any of the Third Parties specifically seeks to collect "sensitive and confidential" "guest record" information for their own purposes.

To the contrary, the relevant terms governing the use of Snap, Google, and Meta pixels—which are incorporated by reference into the Complaint and in any event are subject to judicial notice, *see* RJN at 6-8—each express an intention *not* to receive any information considered "sensitive" or "confidential" unless the business sending it has obtained any legally necessary consent. Snap's terms require web developers to ensure that "personal data" transmitted to Snap

"will not contain . . . any sensitive information or special category data" and that they have obtained "all necessary … consents required to provide or make available the personal data." *Id.* Meta's terms likewise prohibit developers from sending any "sensitive" information to Meta, and require developers to have all "necessary rights and permissions" to send the data. Ex. H at 2. And Google's terms require developers to "abide by an appropriate Privacy Policy" and to "comply with all applicable laws, policies, and regulations." Ex. G at 4.

These policies underscore that the Third Parties do not intend to collect sensitive or confidential information without a user's consent. So, if Plaintiff was right that the information at issue does constitute "guest records" that are "sensitive and confidential," it would follow that the Third Parties do not want to collect that information. Absent *intentional* "interception" of that data by the Third Parties, there can be no predicate violation of CIPA that Wynn could be considered to have "aided." *See Doe I*, 741 F. Supp. 3d at 840–42 (dismissing CIPA claim based on lack of plausible allegations that Google "intentionally obtained patients' private health information," given that Google "told developers not to send personally identifiable information through use of its source code").[6]

This Court's decision in *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), is not to the contrary. There, the Court acknowledged that "Meta may tell third parties and Facebook users that it intends to prevent receipt of sensitive health information," but found the

---

[6] In the same vein, Plaintiff does not adequately plead *Wynn*'s intent to aid or abet violations of the statute. Merely "embedd[ing] . . . software code into [a] website" is not enough to allege aiding and abetting liability under Section 631(a). *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024). The question instead is whether Wynn "knowingly agreed with or employed" any of the third-parties "to engage in conduct that violated the wiretapping statute." *Smith v. YETI Coolers, LLC*, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (explaining that Section 631(a)'s "aiding" clause requires "some level of knowledge and intent," such that "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute"). The Complaint generally alleges that Wynn "purposefully installed various tracking application programming interfaces into the code of its website to aid, employ, agree with, or otherwise enable" tracking. ¶ 2; *see also id.* ¶ 32 (alleging that Wynn "has integrated the Third Parties' wiretaps into the Website"). But those are the kinds of "conclusory allegations" that "do not contain sufficient facts for the Court to draw a plausible inference that [Wynn] knowingly agreed with or employed [Snap, Google, or Meta] to engage in conduct" violating CIPA. *YETI Coolers*, 754 F. Supp. 3d at 943.

"plaintiff contend[ed] that is not what Meta *really* intends," pointing to allegations in the complaint that "Meta's tools and filters are not effective [and] not fully implemented," thus "call[ing] into question Meta's true intent." *Id.* Plaintiff makes no such allegations here, making *Meta* distinguishable. *Doe I*, 741 F. Supp. 3d at 841 (distinguishing *Meta* based on the "difference between … what precisely was alleged in each complaint"). But "to the extent" this Court's ruling in *Meta* "stands for the notion that allegations like the ones in this case are sufficient to plead intent," *id.*, Wynn respectfully asks this Court to reconsider its prior reasoning in light of the more recent decision in *Doe I v. Google*.

**C. Plaintiff's CIPA Section 632 Claim Fails**

"To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent." *YETI Coolers*, 754 F. Supp. 3d at 943. As with Plaintiff's Section 631 claims, Plaintiff has not adequately alleged any intentional violation of the provision by a Third Party, which is enough to preclude the claim. *See YETI Cooler*, 754 F. Supp. 3d at 942. But this claim fails for an additional reason: no "confidential communication" is alleged within the special meaning of this provision.

Section 632 defines "confidential communication" to expressly exclude "a communication made . . . in any . . . circumstance in which the parties to the communication may reasonably expect that the communication may be overheard *or recorded*." Cal. Penal Code § 632(c) (emphasis added). Plaintiff does not and cannot plausibly allege she reasonably expected that her interactions with the Wynn website were not being "recorded." That is because communications with a website are "by nature . . . recorded," meaning that such communications cannot be "confidential" for purposes of Section 632. *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025). "Any reasonably intelligent person savvy enough to use the Internet is aware that messages are received in a recorded format and can be downloaded or printed [or shared] by the party receiving the message." *TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 452 n.8 (2002) (internal quotation marks omitted). As a result, "by sending a communication over the Internet, the party expressly consents to the recording of the message" and thus lacks the reasonable expectation required under Section 632. *Id.* (same).

Plaintiff alleges that her communications with Wynn are "confidential" because they purportedly qualify as guest records under California Civil Code Section 53.5. *See, e.g.*, ¶¶ 149, 152–54. But even if Plaintiff had a reasonable expectation that Wynn would not share her alleged communications with others, "that expectation . . . does not reasonably give rise to the expectation that nobody (including the [website]) would record the communications," as Section 632 requires. *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (dismissing Section 632 claim). Accordingly, regardless of whether the alleged communications were legally protected in any way under California law, they were not "confidential" within the specific meaning of Section 632. *See Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) (explaining that "courts generally find that Internet communications do not have an objectively reasonable expectation of confidentiality" within the meaning of Section 632); *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications.").

**D. Plaintiff's Wiretap Act Claims Fail**

Finally, Plaintiff's Wiretap Act claims fail for two reasons. First, the Wiretap Act is a one-party consent statute, meaning that *Wynn's* consent to any interceptions defeats Plaintiff's claims. Second, the Wiretap Act does not provide for aiding-and-abetting liability.

**1. Wynn's Consent Defeats the Wiretap Act Claim**

Plaintiff alleges that Wynn "enables" the Third Parties to receive data about user interactions with Wynn's website. ¶ 34. That implies Wynn consented to the Third Parties receiving the data. And that consent dooms Plaintiff's Wiretap Act claim—because the Wiretap Act does not apply so long as at least "*one* of the parties to the communication has given prior consent" to an alleged interception. 18 U.S.C. § 2511(2)(d) (emphasis added); *see Rodriguez*, 2021 WL 2026726, at *6; *see also In re Yahoo Mail Litig.*, 7 Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim.").

Plaintiff tries to plead around this problem by invoking the crime-tort exception, which provides that a party's consent does not defeat liability where the communication was "intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Specifically, Plaintiff claims that Wynn "intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of . . . California['s] Guest Records Privacy Statute, Cal. Civil Code § 53.5(a)." ¶ 172. This argument fails, however, because the crime-tort exception is focused on the "purpose for the interception," not the "means" of interception. *Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999). A plaintiff seeking to rely on the exception must therefore do more than suggest that a defendant acted unlawfully; they must allege that the interceptor intended to use the intercepted communication "for the purpose of facilitating some *further* impropriety, such as blackmail." *Id.*; *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (the wrongful purpose must be "separate and independent from the act of recording"). While Plaintiff alleges (incorrectly) that the transmission of the data at issue to the Third Parties was unlawful by virtue of supposedly violating Section 53.5, there are no plausible allegations that Wynn transmitted the data *for the purpose* of violating Section 53.5, which would make no sense, and would not be separate from the interception itself.[7]

Wynn's consent also defeats Plaintiff's claims based on violations of Sections 2511(1)(c) and (d), which are predicated on use and disclosure of intercepted communications. "Those provisions . . . only prohibit disclosure and use when the 'information was obtained through the *interception* of a . . . communication *in violation of this subsection*." 18 U.S.C. § 2511(1)(c)–(d); *see Hyatt*, 2026 WL 1235036, at *6. And because "consent . . . means that the interception itself is not unlawful," it defeats all of Plaintiff's Wiretap Act claims.

---

[7] As for Plaintiff's allegations that Wynn sought to "generate profits and increase revenue" from its conduct through advertising, ¶¶ 165–66, that is not enough either. Advertising is not, after all, criminal or tortious. *See Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (rejecting profiling or targeted advertising as basis for invoking crime-tort exception); *see Rodriguez*, 2021 WL 2026726, at *6 n.8 (same).

**2. The Wiretap Act Does Not Provide for Aiding-and Abetting Liability**

The Wiretap Act allows civil plaintiffs to recover only where the plaintiff's "wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520. That provision does not provide for "secondary liability." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006); *see also Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) ("This language does not encompass aiders or abettors," and the "only persons liable are those who engaged in 'that violation'" under Section 2520); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) ("[T]here is simply no secondary liability (such as aiding and abetting) under the ECPA.").

Plaintiff's theory is that Wynn "intentionally procured third-parties" to violate the Wiretap Act's substantive provisions. ¶ 163. But "Plaintiff cannot sustain a [Wiretap Act] claim under a procurement theory of interception and so any claim in the Complaint that is rooted in this theory must be dismissed." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: August 3, 2026

By: /s/ Serrin Turner

LATHAM & WATKINS LLP
Serrin Turner (*PHV Pending*)
*serrin.turner@lw.com*
Ben Harris (Bar No. 338340)
*ben.harris@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Bradley M. Baglien (*PHV Pending*)
*brad.baglien@lw.com*
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Telephone: +1.312.876.7700

*Attorneys for Defendant*
*Wynn Resorts Holdings, LLC*